IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| NOE DE JESUS ORTIZ VILLAGRAN | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-00336 |
| | § | |
| COUNTY OF EL PASO, TEXAS, | § | |
| and the UNITED STATES OF | § | |
| AMERICA, | § | |
| | § | |
| *Defendants*, | § | JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

### INTRODUCTION

Noe de Jesus Ortiz Villagran (Ortiz Villagran) fled death threats against him and his family and arrived into the United States seeking asylum on June 5, 2018.  Upon entry, rather than being treated as an asylum seeker – Ortiz Villagran was treated like a criminal and subjected to the U.S. policy of family separation.  He was immediately separated from his children and put into criminal proceedings under the custody of the U.S. Marshals (Marshals).  Ortiz Villagran pleaded guilty to a misdemeanor and was sentenced to 35 days in criminal detention to be released on July 9, 2018.  Rather than releasing him on July 9, 2018, the Marshals and the County of El Paso, Texas (The County) held him illegally and unconstitutionally as a prisoner in the El Paso County Detention Facility (EPCDF) for 80 days – long after he served his time for a misdemeanor charge.  This overdetention was a direct result of County policies that prohibit releasing federal detainees except to employees of federal agencies – even if that person is being held unconstitutionally.  As a result of his overdetention, Ortiz Villagran was not able to reunite with his children for months past the time he should have been reunited.  His overdetention

violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights and constituted false imprisonment.  The County also violated his rights under the Americans with Disabilities Act.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over all causes of action herein pursuant to 28 U.S.C. §§ 1331, 1343, and 1346(b).  Plaintiff's claims for relief are created by 42 U.S.C § 1983 and 28 U.S.C. §§ 2671-2680.

2.     Venue is proper in this court under 28 U.S.C. § 1391 and 28 U.S.C. § 1402(b).

## PARTIES

3.     Plaintiff, NOE DE JESUS ORTIZ VILLAGRAN, is a natural person who was held illegally in the El Paso County Detention Facility (EPCDF) under the joint custody of the Marshals and the County.

4.     Defendant, COUNTY OF EL PASO, TEXAS, is a local governmental entity organized under the laws of the State of Texas.  Under its authority, the County operates the EPCDF.  The County funds and operates the EPCDF and employs and compensates the detention officers in the EPCDF.

5.     Defendant United States of America (U.S.) is a sovereign nation responsible for enforcement of the laws and custody of certain federal detainees through officers, agents, and employees of the U.S. Marshals Service.

## FACTUAL BACKGROUND

## I.     COUNTY OF EL PASO'S AGREEMENT WITH THE U.S. MARSHALS FOR DETENTION OF FEDERAL DETAINEES IN THE EPCDF.

6.     On March 30, 2009, then-County Judge Anthony Cobos signed a Housing Prisoners Agreement (the Agreement) with the U.S. Marshals Service.  The inter-governmental agreement authorizes the Marshals to house the following individuals in the EPCDF: (1) persons

charged with federal offenses who are detained while awaiting trial; (2) persons who have been sentenced and are awaiting designation and transportation to a Bureau of Prisons facility; (3) or individuals who are awaiting a hearing on their immigration status or deportation.

7.      As of the most recent modification to this contract in December of 2015, signed by then-County Judge Veronica Escobar, the Marshals are required to pay the County $80 per federal detainee per day of detention in the EPCDF.

8.      The Agreement and the policies contained therein were adopted by Sheriff Richard Wiles – who is the County's final policymaker in the area of law enforcement and the management of the EPCDF. Sheriff Richard Wiles created additional EPCDF policies that implemented the terms of the Agreement.

9.      The Agreement states that Marshals employees are responsible for custody, care, and "safekeeping" of Marshals detainees.  The County is responsible for housing of Marshals detainees and all medical care inside the facility.  The Marshals are authorized to access the facility and review all records to ensure proper treatment of federal detainees.

10.      Under the terms of the Agreement, the County "agrees to release federal detainees only to law enforcement officers of the Federal Government agency initially committing the federal detainee (i.e. Drug Enforcement Administration, Immigration and Custom Enforcement, etc.) or to a Deputy United States Marshal (DUSM).  Those federal detainees who are remanded to custody by a DUSM may only be released to a DUSM or an agent specified by the DUSM of the Judicial District." (emphasis added)

11.      Under this policy, the County is required to keep federal detainees in its jail without regard to any lawful basis for the federal detainee's detention.  Even if the County is to

determine that a federal detainee is unlawfully held, the County has no discretion to release that person under its own policy.

12.     The County's policy is facially unconstitutional – requiring the County to keep federal detainees in its jail regardless of whether the County has lawful authority to retain custody over the federal detainees.

## II.     ORTIZ VILLAGRAN'S UNLAWFUL OVERDETENTION.

13.     Ortiz Villagran hurriedly left his home in Guatemala with his family in late May fleeing gang violence from the Barrio 18 gang (aka the "18th Street Gang," "Mara 18").  The Barrio 18 had brutally murdered Ortiz Villagran's brothers-in-law and came for Ortiz Villagran in 2018 – attacking his home and threatening to kill him.

14.     Ortiz Villagran fled with his family to the United States, entered the United States in El Paso, Texas on June 5 with his children, and immediately turned himself into immigration authorities.

15.     On May 7, 2018, the U.S. government announced a "zero tolerance policy" of deterrence for families seeking asylum in the United States.  Pursuant to this policy, the government would separate families by referring all adults in family units to criminal prosecution while the children would remain in the custody of a sponsor or held in the custody or shelter of the Office of Refugee Resettlement (ORR).

16.     Ortiz Villagran and his family were in the crosshairs of this zero-tolerance policy as soon as they entered the United States – Ortiz Villagran was immediately separated from his children upon entry by U.S. Customs and Border Patrol agents (CBP).  Ortiz Villagran was devastated as he watched the agents take his children.

17.     On or about 3:30 a.m. on June 5, CBP agents Estevan Orozco and Marshal Melisio Hernandez remitted Ortiz Villagran to the EPCDF to await his trial for the single federal misdemeanor crime of 18 U.S.C. § 1325 (1325).  At that time, he was housed in the EPCDF and under Marshals custody.

18.     Ortiz Villagran's children were kept in custody of the ORR for around one and a half months – separated from their father the entire time.  They eventually were released to a family member on July 23, 2018.

19.     At the time of entry into custody, CBP agents also provided officers at the EPCDF with a DHS detainer, Form I-247.  Through this Form, DHS requested EPCDF to maintain custody of Ortiz Villagran for a period of time "not to exceed 48 hours beyond the time when he/she would otherwise have been released from your custody. . ."  Under the plain language of the Form I-247, if the County kept Ortiz Villagran in the EPCDF beyond 48 hours from the date his sentence was served, the County would lack any independent authority to detain Ortiz Villagran under the terms of the detainer.  8. C.F.R. § 287.7(d).

20.     Ortiz Villagran remained in custody until his initial appearance on June 15, 2018 in front of the Honorable Miguel Torres.  Ortiz Villagran was assigned an appointed criminal defense attorney and was presented to the Court with around 15 other detainees also present for their initial appearance for 1325 misdemeanor charges.

21.     At the June 15 hearing, Ortiz Villagran pled guilty to the 1325 misdemeanor charge and was sentenced to 35 days to include time served between June 5 to June 15.

22.     Ortiz Villagran's sentence concluded on July 9, 2018.  Therefore, Ortiz Villagran should have been released from the EPCDF on July 9, 2018 or, under the terms of the DHS detainer, 48 hours thereafter.

23.     Instead, Ortiz Villagran was not released from EPCDF until August 24, 2018 – a full 46 days beyond the date he completed his sentence.

24.     After July 9, 2018, Ortiz Villagran was in a constant state of anxiety and eager to be reunited with his family.  He made at least five requests to EPCDF detention officers seeking to understand why he was detained after his misdemeanor criminal sentence had been served. EPCDF officers told him in response that it wasn't their job to investigate why he was in jail.

25.     During Ortiz Villagran's time at EPCDF and after his sentence had concluded, he was never served with a warrant for his arrest, never received a notice to appear before an immigration judge, and never received an immigration order of removal.  In violation of DHS policy, he was also never served with the DHS detainer request in his name.  He was not provided a bond, judicial review, or provided any due process of law.  Nor were there any facts to establish probable cause to the County or the Marshals that Ortiz Villagran had committed a crime after July 9, 2018.  Finally, Ortiz Villagran did not provide consent to remain in EPCDF custody after July 9, 2018.

26.     On June 26, 2018, the Honorable Dana Sabraw from the United States District Court, Southern District of California entered an injunction in *Ms. L et al v. U.S. Immigration and Customs Enforcement, et al,* Case No. 18-cv-00428-DMS-MDD (S.D. Cal.) requiring that the U.S. government reunify all parents with their minor children if the adult was detained in immigration custody by DHS.  The Court ordered that such reunifications – for those children five and up – must take place by July 26, 2018.

27.     During Ortiz Villagran's extended detention, he asked EPCDF detention officers about his children.  He was informed by some EPCDF detention officers that they did not know anything about reunification.

28.     Ortiz Villagran was not reunified with his children on July 26, 2018 as ordered by Judge Sabraw for the sole reason that he was not in DHS custody.  The only reason he was not in DHS custody on July 26, 2018 was because he was still unlawfully jailed in the EPCDF in the custody of the U.S. Marshals.

29.     Finally, in or around August, Ortiz Villagran's children were able to obtain an attorney.  This attorney attempted to find Ortiz Villagran in the ICE Online Detainee Locator System numerous times in August until she was informed that he may be at the EPCDF.

30.     On August 14, 2018, the children's attorney called the EPCDF and was informed by a detention officer from Inmate Processing that Ortiz Villagran was in the EPCDF but should have been released to ICE custody.  The detention officer informed the children's attorney that Ortiz Villagran was physically present and that there was no reason why he was detained at the EPCDF.

31.     After this telephone call, the County continued to keep Ortiz Villagran in the EPCDF unlawfully for another ten days.  It did so because of its policy to refuse release of Ortiz Villagran unless the Marshals or an agency designated by the Marshals arrived at the EPCDF to pick him up.

32.     About one week later, Ortiz Villagran's prior court-appointed criminal defense attorney called the EPCDF again along with some other advocates asking why Ortiz Villagran was still being detained at the EPCDF.

33.     Ortiz Villagran was finally released to DHS custody on August 24, 2018 – a full 46 days after the date that he served his sentence for a 1325 misdemeanor charge.

34.     Ortiz Villagran was released on bond from DHS custody within a little over one month after his release from the EPCDF.

35.    At no point between July 9, 2018 to August 24, 2018 did agents from the Marshals or an agency designated by the Marshals remove Ortiz Villagran from the EPCDF. Nor did Marshals employees request that any other federal law enforcement agencies pick up Ortiz Villagran from the EPCDF.

## III.    THE COUNTY'S FACIALLY UNCONSTITUTIONAL POLICY FOR DETENTION OF FEDERAL DETAINEES WAS THE MOVING FORCE OF ORTIZ VILLAGRAN'S UNLAWFUL OVERDETENTION.

36.    As mentioned above, the County maintains a policy by which it prevents release of federal detainees unless a federal law enforcement officer comes to pick them up.

37.    The County's policy is facially unconstitutional – requiring the County to keep federal detainees in their custody regardless of whether the County has lawful authority to retain custody over the federal detainees.

38.    The County's policy prevented the release of Ortiz Villagran from July 9, 2018 until August 24, 2018 from the EPCDF because no one from the "law enforcement officers of the Federal Government agency initially committing the federal detainee", the Marshals, or an agency designated by the Marshals, came to pick up Ortiz Villagran.

39.    This County policy directed employees to violate the Constitution and was the direct cause of Ortiz Villagran's overdetention.

## IV.    THE COUNTY'S FACIALLY UNCONSTITUTIONAL POLICY TO PREVENT THE REVIEW OF FEDERAL JUDGMENTS TO ASSESS THE RELEASE DATE OF FEDERAL DETAINEES WAS THE MOVING FORCE OF ORTIZ VILLAGRAN'S UNLAWFUL OVERDETENTION.

40.    The County maintains an official policy – adopted by its decisionmaker – under which County employees at EPCDF are prevented from relying on publicly-available federal judgments to determine whether federal detainees are being lawfully jailed.  By precluding its

employees from independently reviewing the lawful basis for custody of federal detainees in the EPCDF, the County's policy is facially unconstitutional.

41.     The County's policymakers have actual and constructive knowledge of this policy.

42.     Pursuant to the County policy, County employees refused to verify Ortiz Villagran's publicly-available federal court judgment at any point from the point at which he was remitted to the EPCDF until August 24, 2018 to determine whether Ortiz Villagran was lawfully held in the EPCDF.

43.     This County policy directed employees to violate the Constitution and was the direct cause of Ortiz Villagran's overdetention.

## V.     THE COUNTY'S CUSTOM OF OVERDETENTION OF FEDERAL DETAINEES IN THE EPCDF WHO ARE SERVING SENTENCES FOR 1325 MISDEMEANOR CONVICTIONS WAS THE MOVING FORCE OF ORTIZ VILLAGRAN'S UNLAWFUL OVERDETENTION.

44.     EPCDF employees routinely fail to initiate release procedures for federal detainees in the EPCDF who are serving sentences for 1325 misdemeanor convictions until several days after their sentences are served.

45.     Of 283 federal detainees who were in the EPCDF for 1325-related charges on June 10, 2018 and August 22, 2018, at least 114 detainees were held at the EPCDF for a period of at least one day over the date that they should have been released assuming that they were subject to a DHS detainer.

46.     Of the federal detainees in the EPCDF on June 10, 2018 who were counted in paragraph 45, around 22% of the federal detainees were held beyond the date of their DHS detainer – assuming DHS officials provided the EPCDF with a detainer.  For the federal detainees in the EPCDF on August 22, 2018 who were counted in paragraph 45, over 95% were

held beyond the date of any DHS detainer – assuming DHS officials provided the EPCDF with a detainer.

47.     Ortiz Villagran fell victim to this same pattern of overdetention of federal detainees.  This pattern was so widespread as to constitute a custom that fairly represented County policy and was so obvious that it demonstrated the County's policymaker's deliberate indifference toward federal detainees' constitutional rights.

48.     Upon information and belief, the County policymaker had direct knowledge of these extremely high overdetention numbers and acted with deliberate indifference to the consequences of this custom.

49.     This custom was the actual cause of the violation of Ortiz Villagran's constitutional rights and overdetention in the summer of 2018.

50.     The County held Ortiz Villagran in the EPCDF, against Ortiz Villagran's will, without his consent, and without any legal authority from July 9 to August 24, 2018.  From July 9 to August 24, 2018, Ortiz Villagran was held without a warrant for his arrest, without any independent review of whether there was probable cause to detain him, without notice of any pending charges, and without an opportunity to appear before a judge to seek his release or to post bond.

## VI.    THE COUNTY'S FAILURE TO ACCOMMODATE ORTIZ VILLAGRAN'S DISABILITY DURING HIS DETENTION AT EPCDF.

51.     Upon intake, it is the policy of the County to conduct a medical screening on all incoming federal detainees.  The County's medical provider did conduct such a screening and informed EPCDF staff that Ortiz Villagran has a "Left Foot Amputated."

52.     Ortiz Villagran's left foot was amputated as a result of an injury that he incurred in Guatemala.  He arrived in El Paso wearing a specialized boot that helped to stabilize his leg for walking.

53.     Detention officers at EPCDF took his boot away and did not let him use any boot or other specialized footwear to be able to walk in the County Jail.  EPCDF only provided Ortiz Villagran with a sock to cover his amputated foot.

54.     Ortiz Villagran repeatedly asked County employees at the EPCDF for an accommodation for his amputated foot but EPCDF did not provide him with any stabilizing footwear or even a protective covering other than the thin sock.

55.     During his eighty days of detention at the EPCDF, Ortiz Villagran's amputated foot was in contact with the bare cell floor which was often cold.  This caused him extreme pain in his residual limb and caused him to fall to the ground on numerous occasions.  It caused him physical pain and suffering, mental anguish, and severe emotional distress.

## CLAIMS FOR RELIEF

### I.  MONELL VIOLATIONS – 42 U.S.C. § 1983
(Against the County of El Paso, Texas)

56.     County employees unlawfully detained Ortiz Villagran in the EPCDF for a period of 46 days – from July 9, 2018 to August 24, 2018 – in violation of his rights under the Fourth, Fifth, Eighth, and Fourteenth amendments of the U.S. Constitution.

57.     On information and belief, Defendant County of El Paso – through the decisions of its policymaker – was directly responsible for the aforementioned misconduct, which proximately caused Ortiz Villagran's injuries.

58.     Specifically, the County maintains a policy to keep all federal detainees in the EPCDF unless and until one of the following federal agents come to pick up the federal detainee:

(1) a federal law enforcement officer that committed the detainee into the EPCDF; (2) the Marshals; or (3) a federal agent designated by the Marshals.  Pursuant to this policy, County employees have no discretion to release federal detainees even if there is no lawful basis for the federal detainee's detention.

59.     Moreover, the County maintains a policy under which County employees at EPCDF are prevented from reviewing publicly-available federal judgments to determine whether federal detainees are being lawfully jailed at any point during their time at the EPCDF.  By ordering its employees to not independently review the lawful basis for custody of federal detainees in the EPCDF, the County's policy is facially unconstitutional.

60.     In addition, the County had a custom of overdetaining federal detainees in EPCDF custody for 1325 misdemeanor charges.

61.     The aforementioned policies, practices, and customs were adopted by the County's policymaker with deliberate indifference to the constitutional rights of persons in El Paso.

62.     The aforementioned policies, practices, and customs were moving forces and/or proximate causes of the deprivations of Erik's clearly established and well settled constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth amendments in violation of 42 U.S.C. §1983.

## II.     VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT
(Against the County of El Paso, Texas)

63.     Title II of the Americans with Disabilities Act (ADA) and the Rehabilitation Act of 1973 (Rehabilitation Act) prohibit public entities from engaging in discrimination against persons with disabilities.

64.     The County has been, and is, a recipient of federal funds, and thus covered by the mandate of the Rehabilitation Act. The Rehabilitation Act requires recipients of federal monies to reasonably accommodate persons with disabilities in their facilities, program activities, and services and reasonably modify such facilities, services and programs to accomplish this purpose.

65.     Further, Title II of the ADA and the ADA Amendments Act apply to the County and subject to the same mandate as the Rehabilitation Act. 42 U.S.C. §12131 *et seq*.

66.     The County and the EPCDF are public entities within the meaning of Title VII of the ADA and provide services, programs, and activities to the general public.

67.     For purposes of the ADA, ADA Amendments Act, and Rehabilitation Act, Ortiz Villagran is a qualified individual regarded as having a physiological impairment that substantially limits one or more of his major life activities.

68.     Ortiz Villagran suffers from a partially amputated left foot.

69.     From the time that he was taken into custody, the County and its staff at the EPCDF were well aware throughout Ortiz Villagran's detention of eighty days in the EPCDF that Ortiz Villagran had an amputated foot and needed either stabilizing footwear or some protective covering for his residual limb.

70.     The County failed to reasonably accommodate Ortiz Villagran for his amputated foot – causing him injury, emotional distress, and pain and suffering.

### III.     FEDERAL TORT CLAIMS ACT (FTCA) – FALSE IMPRISONMENT
(Against the U.S.)

71.     Employees in the Marshals office are responsible for the detention of all federal detainees in its custody.

72.    Marshals employees did not ensure that Ortiz Villagran – a federal detainee in its custody – was released upon termination of his sentence on July 9, 2018.

73.    Marshals employees in El Paso, Texas did not send an agent to recover Ortiz Villagran from the EPCDF upon termination of his sentence, nor did they designate another federal agency to release him, nor did they request that other federal law enforcement agencies pick up Ortiz Villagran.

74.    Marshals employees falsely detained Ortiz Villagran without his consent and without authority of law from July 9 to August 24, 2018.

75.    Plaintiff has exhausted all administrative remedies under the FTCA and this claim is properly before the Court's jurisdiction.

## COMPENSATORY DAMAGES

76.    Because of Defendants' actions, Ortiz Villagran is entitled to compensatory damages for his past and future pecuniary loss, past and future loss of companionship and society, past and future mental anguish, past and future pain and suffering, and all other compensatory damages to which he may be entitled.

## EXEMPLARY DAMAGES

77.    The overdetention of Ortiz Villagran was done willfully, deliberately, maliciously or with reckless disregard of the rights of Ortiz Villagran entitling Ortiz Villagran to punitive damages.

## ATTORNEY'S FEES

78.    Plaintiff is entitled to recover his attorney fees and costs necessary to enforce his rights pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court grant the following relief:

A.      Award Plaintiff compensatory damages for the acts described above;

B.      Award Plaintiff punitive damages against Defendants;

C.      Enter a finding that Plaintiff is the prevailing party in this case and award attorney fees, litigation costs and expenses plus pre-trial and post-trial interest against Defendants pursuant to 42 U.S.C. § 1988; and

D.      Grant such other and further relief in law or in equity to which Plaintiff may be entitled.


Dated: November 21, 2019                    Respectfully submitted,

THE LAW OFFICE OF LYNN COYLE, PLLC
2515 North Stanton Street
El Paso, Texas 79902
(915) 532-5544
Fax (915) 532-5566


By:      /s/ Lynn Coyle
LYNN COYLE
Texas Bar No. 24050049
lynn@coylefirm.com
CHRISTOPHER BENOIT
Texas Bar No. 24068653
chris@coylefirm.com

*ATTORNEYS FOR PLAINTIFF*