**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **NOE DE JESUS ORTIZ VILLAGRAN,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. EP-19-CV-00336-DCG-ATB** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| **COUNTY OF EL PASO, TEXAS,** | § | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE MAGISTRATE JUDGE**

On this day, the Court considered the "Rule 12(b) Motion to Dismiss All Claims Against EL Paso County" ("Motion"), filed by Defendant El Paso County ("County") on December 23, 2019. (ECF No. 11). The matter was referred to this Court pursuant to the Standing Order referring prisoner civil rights cases to United States Magistrate Judges.

For the reasons set forth below, the Court **RECOMMENDS** that the County's Motion be **GRANTED IN PART AND DENIED IN PART**, as set forth herein.

# I.    BACKGROUND

## a.    Procedural Background

Plaintiff Noe De Jesus Ortiz Villagran ("Ortiz Villagran") filed his complaint ("Complaint") on November 21, 2019, alleging that the County violated his constitutional rights and discriminated against him because of his disability. (ECF No. 1). In his Complaint, Ortiz Villagran alleges that the County violated his constitutional rights by over-detaining him, and seeks to bring a claim pursuant to Section 1983 ("Section 1983 Claim") for this alleged over-detention. (*Id.* at 11). Ortiz Villagran further seeks to bring a claim against the County for violating Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. (*Id.*

at 11-12).[1] Ortiz Villagran also contends that his over-detention "was done willfully, deliberately, maliciously or with reckless disregard of the rights of Ortiz Villagran[,] entitling [him] to punitive damages." (*Id*. at p. 14).

The County filed its Motion on December 23, 2019, seeking dismissal of all of Ortiz Villagran's claims brought against the County. (ECF No. 11). Ortiz Villagran filed his response ("Response") on January 13, 2020.[2] (ECF No. 13). The County filed its reply ("Reply") on January 17, 2020. (ECF No. 14). Ortiz Villagran filed his sur-reply ("Sur-Reply") on January 23, 2020. (ECF No. 16).

### b.     Factual Background[3]

Ortiz Villagran alleges in his Complaint that the County violated his constitutional rights by over-detaining him, and seeks to bring a claim pursuant to Section 1983 for this alleged over-detention. (*Id*. at 11). Ortiz Villagran alleges that on June 15, 2018, he pled guilty to violating 8 U.S.C. § 1325 and was sentenced to thirty-five days detention, with credit for time served. (ECF No. 1, p. 5). He further contends that he was not released from the El Paso County Detention Facility until August 24, 2018. (*Id*. at 6). Ortiz Villagran alleges that because he was not released until August 24, 2018, he was detained at the El Paso County Detention Facility for forty-six days beyond the date he completed his sentence. (*Id*.).

In his Complaint, Ortiz Villagran alleges three separate and distinct County policies or customs that he contends were responsible for his over-detention. First, in accordance with an agreement ("Agreement") signed on March 30, 2009, by County Judge Anthony Cobos and the

---

[1] Ortiz Villagran also seeks to bring a claim against the United States related to the facts alleged in his Complaint. (ECF No. 1). However, because this Report and Recommendation only addresses the County's Motion, the Court will not otherwise address those claims brought against the United States.

[2] The Court granted Ortiz Villagran a fourteen day extension to file his Response. *See* (Text Order dated January 2, 2020).

[3] While recounting the factual background, the Court addresses only the facts relevant to the immediate Report and Recommendation.

United States Marshals Service ("Marshals"), the County agreed to house federal defendants at the El Paso County Detention Facility and further agreed not to release the federal defendants to anyone except to the Marshals, the appropriate federal agency, or in accordance with a court order. (*Id*. at 3, 8). Second, Ortiz Villagran alleges that El Paso County Sheriff Richard Wiles implemented a policy that prohibits employees at the El Paso County Detention Facility from accessing the publicly available federal judgments to determine if there is a lawful basis to continue holding federal defendants. (*Id*. at 8-9). Finally, Ortiz Villagran alleges that the County has a custom of over-detaining federal defendants for at least one day beyond when the federal defendants should be released after completing their sentence for violating 8 U.S.C. § 1325. (*Id*. at 9-10).

Ortiz Villagran further alleges that the County discriminated against him because of his disability, in violation of the ADA and the Rehabilitation Act. (*Id*. at 11-12). Ortiz Villagran alleges in his Complaint that he has an amputated left foot. (*Id*. at 11). Further, despite arriving at the El Paso County Detention Facility "wearing a specialized boot that helped to stabilize his leg for walking[, d]etention officers at [the] EPCDF took his boot away and did not let him use any boot or other specialized footwear to be able to walk in the County Jail." (*Id*.). Ortiz Villagran further contends that the "EPCDF only provided [him] with a sock to cover his amputated foot." (*Id*.). Ortiz Villagran also contends that despite "repeatedly ask[ing] County employees at the EPCDF for an accommodation for his amputated foot[,]" Ortiz Villagran was not provided "with any stabilizing footwear or even a protective covering other than [a] thin sock" by the El Paso County Detention Facility employees. (*Id*.). "During his eighty days of detention at the EPCDF, Ortiz Villagran's amputated foot was in contact with bare cell floor which was often cold." (*Id*.). Ortiz Villagran alleges that "[t]his caused him extreme pain in his residual limb and caused him to

fall to the ground on numerous occasions [and] caused physical pain and suffering, mental anguish, and severe emotional distress." (*Id.*).

## II.    LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint when a defendant shows that the plaintiff has failed to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual matter contained in the complaint must allege actual facts, not legal conclusions masquerading as facts. *Id.* (citing *Twombly*, 550 U.S. at 555) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").

To resolve a Rule 12(b)(6) motion, courts must determine "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (citation omitted). A complaint states a "plausible claim for relief" when the factual allegations contained therein infer actual misconduct on the part of the defendant, not a "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. The complaint "'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

## III.  ANALYSIS

In its Motion, the County contends that all of Ortiz Villagran's claims against it must be dismissed for four reasons.  First, the County contends that "*Heck v. Humphrey*, [512 U.S. 477 (1994)] precludes Ortiz Villagran's Section 1983 claims because he fails to meet the 'favorable termination requirement.'" (ECF No. 11, p. 1) (footnote omitted).  Second, the County argues that Ortiz Villagran "pleads no unconstitutional policy or custom that was the moving force behind any alleged constitutional violation by El Paso County." (*Id*.).  Third, the County contends that Ortiz Villagran "fails to state a claim under the ADA based on a failure to accommodate theory and makes insufficient allegations of inadequate medical care." (*Id*.).  Finally, the County argues that "[p]unitive damages are not recoverable against El Paso County." (*Id*.).

### a.    *Heck v. Humphrey*'s Favorable Termination Requirement

In the Motion, the County contends that "Ortiz Villagran's Section 1983 claim is precluded by the favorable termination requirement of *Heck v. Humphrey*." (ECF No. 11, p. 4).  In response, Ortiz Villagran argues that his "[Section] 1983 claim against the County does not implicate the favorable termination requirement set forth in *Heck v. Humphrey*." (ECF No. 13, p. 5).

### 1.    *Heck*'s Bar on Civil Rights Claims

In *Heck v. Humphrey*, "the Supreme Court held that if a plaintiff's civil rights claim for damages challenges the validity of his criminal conviction or sentence, and the plaintiff cannot show that such conviction or sentence has been reversed, invalidated, or otherwise set aside, the claim is not cognizable under § 1983." *Magee v. Reed*, 912 F.3d 820, 822 (5th Cir. 2019) (citing *Heck*, 512 U.S. at 486-487).  "*Heck* requires the district court to consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or

sentence has already been invalidated." *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006) (internal quotation marks omitted). Further, "[t]his requirement or limitation has become known as the 'favorable termination rule.'" *Id.* (quoting *Sappington v. Bartee*, 195 F.3d 234, 235 (5th Cir. 1999)). Finally, "the fact that [a plaintiff] is no longer a prisoner 'in custody' for his offense and thus may not seek habeas relief does not excuse him from the 'favorable termination' rule of *Heck*, which instead relies on the dismissal of the indictment." *Morris v. McAllester*, 702 F.3d 187, 192 (5th Cir. 2012) (citing *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000)).

"However, if a successful civil rights claim will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the claim should be allowed to proceed, in the absence of some other bar to the suit." *Magee*, 912 F.3d at 822 (citing *Heck*, 512 U.S. at 487). "Determining whether a particular claim is barred by *Heck* is 'analytical and fact-intensive' and requires the court to consider the specifics of the individual claim." *Smith v. Hood*, 900 F.3d 180, 185 (5th Cir. 2018) (quoting *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008)). To conduct this analysis, the Court assesses "whether a claim is temporally and conceptually distinct from the related conviction and sentence." *Id.* (internal quotation marks omitted). Further, the Court "ask[s] whether the claims are 'necessarily inconsistent' with the conviction, or whether they can 'coexist' with the conviction or sentence without 'calling [it] into question.'" *Id.* (quoting *Ballard*, 444 F.3d at 400-01) (second alteration in original).

### 2.     Ortiz Villagran's Section 1983 Claim against the County

In its Motion, the County contends that Ortiz Villagran's Section 1983 Claim against the County is barred by *Heck*'s favorable termination rule. (ECF No. 11, p. 4). In Response, Ortiz Villagran contends that his Section 1983 Claim does not implicate *Heck*'s favorable termination requirement. (ECF No. 13, p. 5).

In its Motion, the County primarily relies on *Randell v. Johnson* to support its contention that *Heck's* favorable termination rule bars Ortiz Villagran's Section 1983 Claim. *See* (ECF No. 11, p. 4-5) (citing *Randell v. Johnson*, 227 F.3d 300 (5th Cir. 2000)). In *Randell*, the Plaintiff alleged that he "was not given credit for [time served pursuant to a warrant from the Texas Board of Pardons and Paroles] and therefore had to serve the time over again." 227 F.3d at 300. The plaintiff argued that because "he [was] no longer in custody and thus c[ould] not file a habeas petition[,] . . . he d[id] not need to prove that the underlying proceedings upon which his conviction was based ha[d] been terminated in his favor, since he c[ould] no longer seek habeas relief." *Id*. at 301. The Court rejected this argument and held that "[b]ecause [the plaintiff was] seeking damages pursuant to § 1983 for unconstitutional imprisonment and ha[d] not satisfied the favorable termination requirement of *Heck*, he [was] barred from any recovery and fail[ed] to state a claim upon which relief may be granted." *Id*. at 301.

The County contends that just "as in *Randell*, Ortiz Villagran cannot seek a writ of habeas corpus because he is no longer in custody, therefore he cannot meet the favorable determination requirement." (ECF No. 11, p. 5). The County further contends that "[b]ecause Ortiz Villagran is seeking monetary damages pursuant to Section 1983 for an alleged unconstitutional over-detention and cannot satisfy the favorable termination requirement under *Heck*, he fails to state a claim under Section 1983 and his claim should be dismissed." (*Id*.).

The County's Reply further relies on *Black v. Hathaway* to support its contention that *Heck's* favorable termination rule bars Ortiz Villagran's Section 1983 Claim. *See* (ECF No. 14, p. 3) (citing *Black v. Hathaway*, 616 Fed. App'x. 650 (5th Cir. 2015)). In *Black*, the plaintiff:

> d[id] not contend that his § 1983 claims [were] the type that ordinarily fall outside of *Heck's* ambit, i.e., claims that will not demonstrate the invalidity of a plaintiff's conviction. Rather, because he [was] no longer in custody and therefore c[ould not]

> seek habeas relief to satisfy the favorable-termination rule, Black contend[ed] that the rule d[id] not apply to his § 1983 claims.

616 F. App'x. at 652 (internal emphasis and quotation marks omitted). Relying on *Randell*, the Court rejected this argument and found that *Heck's* favorable termination rule barred his claim. *Id*. at 654.

The *Randell* Court's holding was a result of the plaintiff "seeking damages pursuant to § 1983 for unconstitutional imprisonment." *Randell*, 227 F.3d at 301. The application of *Heck*'s favorable termination requirement by the *Randell* Court necessarily dictates that the Court also found that the plaintiff's claim would question the validity of his sentence or conviction because "*Heck* . . . 'is not . . . implicated by a prisoner's challenge that threatens no consequence for his [underlying] conviction or the duration of his sentence.'" *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019) (quoting *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam)) (alterations in original). Alternatively, the argument that the *Randell* plaintiff's § 1983 claim would not challenge the validity of the *Randell* plaintiff's sentence or conviction may simply not have been presented to, or considered by, the Court. *See Dunbar v. Seger-Thomschitz*, 615 F.3d 574, 576 (5th Cir. 2010) ("The court of appeals will not consider an issue that a party fails to raise in the district court, absent extraordinary circumstances.").

In his Response, Ortiz Villagran contends that "unlike the plaintiff in *Randell*, [he] makes no allegations that call into question the validity of the conviction or sentence." (ECF No. 13, p. 7). Further, Ortiz Villagran's Complaint makes clear that his Section 1983 action does not challenge either his sentence or his conviction. (ECF No. 1, p. 11-12); *see* (ECF No. 13, p. 6) (Ortiz Villagran "acknowledges and does not challenge either the federal conviction or sentence rendered in the magistrate court's judgment."). That is, Ortiz Villagran does not challenge "the term of incarceration ordered by the court when he was convicted." *Morrow v. Fed. Bureau of*

*Prisons*, 610 F.3d 1271, 1272 (11th Cir. 2010). The plaintiff in *Randell* was arguing that his release from custody and the unavailability of habeas relief meant that he did not have to satisfy *Heck's* favorable termination requirement. *See Randell*, 227 F.3d at 300-01. Ortiz Villagran, by contrast, is arguing that *Heck* does not apply at all because he is not bringing an action that would demonstrate the invalidity of his underlying conviction and sentence. (ECF No. 13, p. 6).

In his first claim for relief, Ortiz Villagran seeks to bring a claim against the County pursuant to 42 U.S.C. § 1983. (ECF No. 1, p. 11). Ortiz Villagran contends that "County employees unlawfully detained Ortiz Villagran in the EPCDF for a period of 46 days – from July 9, 2018, to August 24, 2018 – in violation of his rights under the Fourth, Fifth, Eighth, and Fourteenth amendments of the U.S. Constitution." (*Id*.). In support of this contention, Ortiz Villagran alleges that after pleading guilty on June 15, 2018, to violating 8 U.S.C. § 1325, he was sentenced to thirty-five days confinement with credit for time served. (*Id*. at 5). Ortiz Villagran further alleges that while his sentence was concluded on July 9, 2018, he "was not released from EPCDF until August 24, 2018 – a full 46 days beyond the date he completed his sentence." (*Id*. at 5-6).

When considering a similar section 1983 action brought by a plaintiff for the alleged failure to be timely released after the completion of his sentence, the district court in *Traweek v. Gusman*, found that the *Heck* favorable termination requirement did not bar the plaintiff's claim. *Traweek v. Gusman*, 414 F.Supp.3d 847 (E.D. La. 2019). In *Traweek*, the plaintiff alleged that he was "unlawfully imprisoned . . . [for] almost three weeks beyond his court-ordered release date." *Id*. at 853. The court in *Traweek* determined that because the plaintiff "challenge[ed] neither his conviction nor his sentence[,] . . . the reasoning underlying *Heck's* favorable termination prerequisite [was] simply not implicated." *Id*. at 859. The *Traweek* court further recognized that

"[t]he only conduct the factfinder will probe is that performed by jail officials in administering his release after his release date." *Id*. at 859. Finally, the *Traweek* court concluded that "*Heck's* procedural bar [was] patently inapplicable" because the plaintiff "simply allege[d] that the procedures and action (or inaction) that caused him to be incarcerated for 20 days longer than his criminal judgment permitted unconstitutionally deprived him of his right to due process." *Id*. at 860; *see McNeal v. La. Dep't of Pub. Safety & Corr.*, No. CV 18-736-JWD-EWD, 2020 WL 798321, at *9 (M.D. La. Feb. 18, 2020) (collecting cases).

Accepting as true the facts alleged by Ortiz Villagran in his Complaint about his conviction and release from the EPCDF,[4] the Court concludes that his Section 1983 claim is not barred by the *Heck* favorable termination rule.

Ortiz Villagran "does not challenge or seek to invalidate his underlying conviction, judgment, or the sentence rendered." (ECF No. 13, p. 6). Instead, Ortiz Villagran's Section 1983 Claim against the County is confined to the time period between the completion of his sentence and his release from the EPCDF. *See* (ECF No. 1, p. 11); (ECF No. 13, p. 6). Ortiz Villagran's Claim does not extend to the thirty-five days he served for his violation of 8 U.S.C. § 1325. *See* (*Id.*). Therefore, Ortiz Villagran's Section 1983 Claim against the County appears to be both temporally and conceptually distinct from his underlying conviction and sentence. Accordingly, the Court concludes that a judgment in Ortiz Villagran's favor on his Section 1983 Claim against the County would not necessarily imply the invalidity of his conviction or sentence. Therefore, the Court finds that *Heck's* favorable termination requirement is not implicated by Ortiz Villagran's Section 1983 Claim.

---

[4] *See Ashcroft*, 556 U.S. at 678 (2009).

### b. *Monell* Claim for Municipal Liability

The County also contends that Ortiz Villagran's Section 1983 Claim fails because "there is no cognizable *Monell* claim against the County."[5] (ECF No. 11, p. 5). Ortiz Villagran responds that he has "allege[d] sufficient facts to establish a claim for municipal liability under § 1983." (ECF No. 13).[6]

### 1. Policy or Custom

Municipalities cannot be held liable under 42 U.S.C. § 1983 based upon a theory of vicarious liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*; *see Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) ("[A municipality] is liable only for acts directly attributable to it 'through some [sort of] official action or imprimatur.'") (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

Under Section 1983, municipal liability for a policy or custom claim requires proof of: (1) a policymaker; (2) an official policy or custom; and (3) a violation of constitutional rights that is the "moving force" of the official policy or custom. *Piotrowski*, 237 F.3d at 578. Furthermore, only where a municipality adopts a policy that violates a constitutional right or fails to adopt a policy preventing the violation of a constitutional right "evidenc[ing] a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a [municipal] 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

---

[5] Citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).
[6] The County's Reply (ECF No. 14) and Ortiz Villagran's Sur-Reply (ECF No. 16) only address *Heck's* favorable termination requirement.

Therefore, to establish municipal liability, a plaintiff must establish both municipal causation and culpability. *See Snyder v. Trepagnier*, 142 F.3d 791, 795–96 (5th Cir. 1998) ("Plaintiffs seeking to win under this theory must first prove a direct causal link between the municipal policy and the constitutional deprivation; they then must establish that the city consciously enacted a policy reflecting 'deliberate indifference' to the constitutional rights of its citizens.").

There are multiple ways in which a custom or policy can be found to exist. First, a custom or policy can stem from a single act by an official with final policymaking authority. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986) (establishing that isolated actions or decisions by a municipal policymaker with "final policymaking authority" may create municipal liability). Second, the custom or policy can also be a policy statement formally announced by an official policymaker. *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010) (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)). Finally, a custom or policy can also be demonstrated through a "persistent[,] widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* (quoting *Webster*, 735 F.2d at 841). "For a custom or practice to be considered a de facto policy, however, a plaintiff must allege facts 'showing a pattern of abuses that transcends the error made in a single case.'" *Lozano v. Ortega*, No. EP-14-CV-239-KC, 2014 WL 6611595, at *15 (W.D. Tex. Nov. 19, 2014) (citing *Piotrowski*, 237 F.3d at 582).

### 2. Violation of Ortiz Villagran's Constitutional Rights

Under *Monell*, municipal liability requires "a violation of constitutional rights whose moving force is the policy or custom." *Piotrowski*, 237 F.3d at 578. Accordingly, the Court will first address the alleged violation of Ortiz Villagran's constitutional rights.

Ortiz Villagran alleges in his Complaint that he was detained at the EL Paso County Detention Facility after he completed his sentence for violating 8 U.S.C. § 1325. (ECF No. 1, p. 1). The "[d]etention of a prisoner for over 'thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process.'" *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (quoting *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980)). Further, "a jailer has a duty to ensure that inmates are timely released from prison." *Id.* A jailer's "functions include not only the duty to protect a prisoner, but also the duty to effect his timely release." *Whirl v. Kern*, 407 F.2d 781, 792 (5th Cir. 1969).

Accepting that facts alleged in Ortiz Villagran's Complaint as true,[7] he has alleged a violation of his due process rights. In his Complaint, Ortiz Villagran contends that "County employees unlawfully detained Ortiz Villagran in the EPCDF for a period of 46 days – from July 9, 2018 to August 24, 2018 – in violation of his rights under the Fourth, Fifth, Eighth, and Fourteenth amendments of the U.S. Constitution." (ECF No. 1, p. 11). In support of this contention, Ortiz Villagran alleges that after pleading guilty on June 15, 2018 to violating 8 U.S.C. § 1325, he was sentenced to thirty-five days confinement with credit for time served. (*Id.* at 5). Ortiz Villagran further alleges that while his sentence was concluded on July 9, 2018, he "was not released from EPCDF until August 24, 2018 – a full 46 days beyond the date he completed his sentence." (*Id.* at 5-6). This alleged over-detention of forty-six days is longer than the thirty days addressed by the *Douthit* Court. *Douthit*, 619 F.2d at 532.

### 3. Ortiz Villagran's Policy or Custom Allegations

In seeking dismissal of Ortiz Villagran's Complaint, the County contends that Ortiz Villagran has not alleged a custom or policy that is responsible for the alleged violation of his

---

[7] *See Ashcroft*, 556 U.S. at 678 (2009).

constitutional rights.  (ECF No. 11, p. 5-8).  In response, Ortiz Villagran argues that his Complaint raises three separate policies or customs "that were the moving forces of his unconstitutional detention:

(1) the release policy – an unconstitutional policy preventing the release of federal detainees held in the EPCDF even if they were unconstitutionally held;

(2) the no judgment policy – an unconstitutional policy preventing County employees from relying on publicly-available federal judgments to determine whether federal detainees are being unlawfully jailed; and

(3) the County's custom of overdetaining federal detainees in the EPCDF serving sentences for 1325 misdemeanor convictions."

(ECF No. 13, p. 9).  The Court will address each alleged policy or custom in turn.

A.      *The "Release Policy"*

In his Complaint, Ortiz Villagran contends that pursuant to an inter-governmental agreement between the United States Marshals Service and El Paso County, "the County is required to keep federal detainees in its jail without regard to any lawful basis for the federal detainee's detention.  Even if the County is to determine that a federal detainee is unlawfully held, the County has no discretion to release that person under its own policy."  (ECF No. 1, p. 3-4).  Further, Ortiz Villagran contends that "[t]he County's policy is facially unconstitutional – requiring the County to keep federal detainees in its jail regardless of whether the County has lawful authority to retain custody over the federal detainees."  (*Id*. at 4).

In the Motion, the County contends both that the agreement is not a policy and that even if the agreement were to be considered a policy, it was not the moving force that caused Ortiz Villagran's over-detention.  (ECF No. 11, p. 6-7).

The County first argues that "[a] contractual obligation is not the same as a policy. A policy would mean the County had the discretion to release Ortiz Villagran but chose not to do so; that is not the case." (ECF No. 11, p. 6). Further, "[a]bsent an order from a federal judge, the County had to follow its contractual obligations to hold Ortiz Villagran until a federal agency took custody of him." (*Id.*).

Through signing the Agreement, the County has enacted an official policy. An "official policy" is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

*Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015). In this case, the Agreement was a decision by the County to house federal defendants at the El Paso County Detention Facility in exchange for monetary compensation, officially adopted on March 30, 2009, by County Judge Anthony Cobos and subsequently modified in December 2015 by County Judge Veronica Escobar. (ECF No. 1, p. 2-3). The County provides no support for its contention that a contractual obligation limiting its discretion means that the Agreement cannot be considered an official policy. Accordingly, the Court finds that the Agreement is an official policy that was adopted by someone with the authority to do so.

Second, the County argues that the Agreement was not the moving force behind Ortiz Villagran's alleged constitutional violation. (ECF No. 11, p. 7). The County contends that if Ortiz Villagran was over-detained, "the County was not responsible." (*Id.*). Further, "any over-detention of Ortiz Villagran was due to the federal government's failure to act." (*Id.*). In response,

Ortiz Villagran asserts that "[t]he County is responsible under Section 1983 because its own policy was a moving force of Ortiz [Villagran]s' harm under the U.S. Constitution." (ECF No. 13, p. 13).

"[A]n individual convicted for violation of federal law and housed temporarily in a county jail [can] challenge the conduct of his keepers in a suit under § 1983." *Henderson v. Thrower*, 497 F.2d 125 (5th Cir. 1974) (citing *Tolbert v. Bragan*, 451 F.2d 1020 (5th Cir. 1971). In *Tolbert*, the inquiry was "not on the particular circumstances which brought the plaintiff under state control, but rather on the fact of that control and the manner of its exercise." *Id*. at 125-126 (citing *Tolbert*, 451 F.2d 1020).

The County's policy to keep physical custody of a defendant indefinitely, until released to the United States Marshals or some other federal agency, was a moving force behind Ortiz Villagran's alleged over-detention. Based upon the terms of the Agreement, the County agreed to maintain physical custody of federal defendants and only release those defendants to the United States Marshals or some other federal agency. (ECF No. 1, p. 3). How Ortiz Villagran came to be under state control is not the focus, instead the focus is "on the fact of that control and the manner of its exercise." *Henderson*, 497 F.2d at 125. Ortiz Villagran's Complaint alleges that he was in the physical custody of the El Paso County Sheriff's Office and that he continued to be detained at the El Paso County Detention Facility after the completion of his federal sentence because the El Paso County Sheriff's Office did not release him. (ECF No. 1). The County acknowledges that under the agreement, "the County had to follow its contractual obligations to hold Ortiz Villagran until a federal agency took custody of him." (ECF No. 11, p. 7). Ortiz Villagran's Complaint alleges that the El Paso County Sheriff's Office had control over Ortiz Villagran and continued to exercise that control after the completion of his federal sentence, in accordance with its official policy as set out in the Agreement. Therefore, the Court finds that

Ortiz Villagran has alleged in his Complaint that he was physically over-detained at the El Paso County Detention Facility by the El Paso County Sheriff's Office as result of the County's official policy not to release federal defendants.

B.    *The "No Judgment Policy"*

In his Complaint, Ortiz Villagran contends that "[t]he County maintains an official policy – adopted by its decisionmaker – under which County employees at EPCDF are prevented from relying on publicly available federal judgments to determine whether federal detainees are being lawfully jailed." (ECF No. 1, p. 8). In support of this contention, Ortiz Villagran alleges that "[h]e made at least five requests to EPCDF detention officers seeking to understand why he was detained after his misdemeanor criminal sentence had been served. EPCDF officers told him in response that it wasn't their job to investigate why he was in jail." (*Id*. at 6). Ortiz Villagran further alleges that "[p]ursuant to the County policy, County employees refused to verify Ortiz Villagran's publicly-available federal court judgment . . . to determine whether Ortiz Villagran was lawfully held in the EPCDF." (*Id*. at 9).

In the Motion, the County contends that Ortiz Villagran's "conclusory allegations are insufficient to meet the pleading standard." (ECF No. 11, p. 7). The County further contends that while Ortiz Villagran's Complaint alleges that Sheriff Richard Wiles created additional polices to implement the Agreement, Ortiz Villagran "does not provide the name or the content of these alleged policies." (*Id*.). In his Response, Ortiz Villagran asserts that the County's Motion "d[id] not make any argument that a *Monell* claim . . . [was] improperly pled" based on the "no judgment policy." (ECF No. 13, p. 9).

Accepting the facts alleged in the Complaint as true,[8] Ortiz Villagran pleads an official policy that was the moving force behind his alleged over-detention. Contrary to the Motion, the Complaint alleges that El Paso County Sheriff Richard Wiles adopted an official policy for the El Paso County Sheriff's Office that prohibited El Paso County Detention Facility employees "from relying on publicly-available federal judgments to determine whether federal detainees are being lawfully jailed." (ECF No. 1, p. 8). "While not a surety for the legal correctness of a prisoner's commitment, [a jailer] is most certainly under an obligation, often statutory, to carry out the functions of his office. Those functions include not only the duty to protect a prisoner, but also the duty to effect his timely release." *Whirl*, 407 F.2d at 792; *see Porter*, 659 F.3d at 446 ("Our precedent establishes that a jailer has a duty to ensure that inmates are timely released from prison.").[9] Ortiz Villagran alleges that because of the "No Judgment Policy," County employees refused "to determine whether Ortiz Villagran was lawfully held in the EPCDF," directly causing his over-detention. (ECF No. 1, p. 9). Accordingly, the Court finds that Ortiz Villagran has alleged an official policy, adopted by a policymaker, that was the moving force of his constitutional violation, as required for municipal liability under *Monell*.

C.      The "Over-Detention Custom"

Finally, in his Complaint Ortiz Villagran alleges that the County has a custom of over-detaining federal defendants and that "EPCDF employees routinely fail to initiate release procedures for federal detainees in the EPCDF who are serving sentences . . . until several days after their sentences are served." (ECF No. 1, p. 9). In support of this contention, Ortiz Villagran alleges that at least 114 of the 283 federal detainees who were at the EPCDF for 1325 charges

---

[8] *See Ashcroft*, 556 U.S. at 678 (2009).
[9] Texas Government Code § 351.041(a) provides that "[t]he sheriff of each county is the keeper of the county jail. The sheriff shall safely keep all prisoners committed to the jail by a lawful authority, subject to an order of the proper court."

between June 10, 2018, and August 22, 2018, were held at least one day beyond their proper release date. (*Id.*).

In the Motion, the County contends that there is not a custom of over-detention because "it is not El Paso County's obligation under its contract with the federal government to initiate the release procedures for federal prisoners." (ECF No. 11, p. 8). In response, Ortiz Villagran argues that "[t]he County retains responsibility for over-detention of federal detainees in the EPCDF notwithstanding the [Agreement]." (ECF No. 13, p. 16).

Ortiz Villagran fails to allege a custom or policy of over-detention that was the moving force behind the constitutional violation. In his Complaint, Ortiz Villagran alleges that he was over-detained by forty-five days. In contrast, his Complaint alleges that the 114 federal detainees who were over-detained during the relevant time period were over-detained "for a period of *at least one day* over the date that they should have been released assuming that they were subject to a [Department of Homeland Security] detainer."[10] (ECF No. 1, p. 9) (emphasis added); *see* (*Id.*) ("EPCDF employees routinely fail to initiate release procedures . . . until several days after their sentences are served."). A jailer's obligation to release a prisoner "is not breached until the expiration of a reasonable time for the proper ascertainment of the authority upon which his prisoner is detained." *Whirl*, 407 F.2d at 792. The Court in *Porter* held that the "[d]etention of a prisoner for over thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process." *Porter*, 659 F.3d at 445 (internal quotation marks omitted). Similarly, the district court in *Traweek* addressed an alleged over-detention of twenty days. *Traweek*, 414 F. Supp.3d at 847. Ortiz Villagran has provided no authority for the proposition that an over-detention of at least one day means that the "reasonable

---

[10] A detainer directs "a criminal justice agency . . . [to] maintain custody of [an] alien for a period not to exceed 48 hours . . . ." 8 C.F.R. § 287.7

time" for release contemplated by *Whirl* elapsed. Nor does Ortiz Villagran allege a custom or policy of over-detention for the length of time contemplated by the authority he provides. Without more, the Court finds that Ortiz Villagran has failed to allege a custom or policy of over-detention that was the moving force behind the constitutional violation.

### c.     ADA and Rehabilitation Act Claims

Next, the County argues that Ortiz Villagran's claim pursuant to Title II of the ADA and the Rehabilitation Act fails.

> To make out a *prima facie* case under Title II or the Rehabilitation Act, a plaintiff must show '(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.'

*Cadena v. El Paso Cty.*, 946 F.3d 717, 723 (5th Cir. 2020) (*quoting Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)).[11]

Further, "[i]n addition to their respective prohibitions of disability-based discrimination, both the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). The "requested accommodation must also be 'reasonable,' meaning that it does not impose undue financial or administrative burdens or 'fundamentally alter the nature of the service, program, or activity.'" *Cadena*, 946 F. 3d at 724 (*quoting* 28 C.F.R. § 35.130(b)(7)). "Finally, to recover compensatory damages, a plaintiff must also prove that the discrimination was intentional." *Id*.

---

[11] "The language in the ADA generally tracks the language set forth in the R[ehabilitation] A[ct]. In fact, the ADA expressly provides that the remedies, procedures and rights available under the RA are also accessible under the ADA. Thus, jurisprudence interpreting either section is applicable to both." *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 574 (5th Cir. 2002) (internal quotation marks, alterations, and citation omitted).

While "assuming [that] Ortiz Villagran's status as an amputee makes him a qualified individual," the County asserts that Ortiz Villagran "fails to state a claim under Title II of the ADA." (ECF No. 11, p. 9). First, the County contends that Ortiz Villagran "does not allege that he was denied the benefits of, or was excluded from, participation in any jail service program or activity based on his disability." (*Id*.). Second, the County contends that Ortiz Villagran fails to allege facts showing that any discrimination he experienced was "because of his amputated foot" as required for an ADA claim. (*Id*. at 10). Third, the County argues that "Ortiz Villagran's complaint fails to state a claim for an ADA failure to accommodate claim." (*Id*.). Finally, the County contends that Ortiz Villagran cannot recover compensatory damages because he has failed to show that he was intentionally discriminated against. (*Id*.).

### 1.    Discrimination by the Public Entity

A claim against a public entity for violations of the ADA and the Rehabilitation Act requires a Plaintiff to show that "he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity." *Cadena*, 946 F.3d at 723. The County contends that "Ortiz Villagran is not claiming differential treatment or access. Instead, his claim is exactly the type that cannot proceed under the ADA; that treatment for his disability was inadequate." (ECF No. 11, p. 9).

"[A] disabled inmate's right to mobility within a prison is well-established." *Cadena*, 946 F.3d at 724. In *United States v. Georgia*, the Supreme Court observed that "it is quite plausible that the alleged deliberate refusal of prison officials to accommodate . . . disability-related needs in such fundamentals as mobility . . . constitutes 'exclu[sion] from participation in or . . . deni[al of] the benefits of' the prison's 'services, programs, or activities.'" *United States v. Georgia*, 546

U.S. 151, 157 (2006) (quoting 42 U.S.C. § 12132) (third, fourth, and fifth alterations in original). In *Cadena*, the plaintiff arrived at the El Paso County Detention Facility in a wheelchair because of a broken tibia. *Cadena*, 946 F.3d at 721. The plaintiff's wheelchair was then taken away and she was given crutches. *Id*. The Court held that because the plaintiff "repeatedly requested various types of accommodations, and her disability was open and obvious[,] . . . the County was obligated to provide Cadena with reasonable accommodations that allowed her to access its services." *Id*. at 724.

The County's argument is misplaced. In his Complaint, Ortiz Villagran alleges that even though he arrived at the El Paso County Detention Facility "wearing a specialized boot that helped stabilize his leg for walking[, d]etention officers at EPCDF took his boot away and did not let him use any boot or another specialized footwear to be able to walk in the County Jail." (ECF No. 1, p. 15). Further, Ortiz Villagran contends that the lack of stabilizing footwear "caused him to fall to the ground on numerous occasions." (*Id*.). Ortiz Villagran's Complaint alleges that his mobility was impaired based upon having his specialized boot taken away. Accordingly, the Court finds Ortiz Villagran has alleged that he was "excluded from participation in, or . . . denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity" as required for an ADA and Rehabilitation Act claim. *Cadena*, 946 F.3d at 723 (5th Cir. 2020)

### 2. Exclusion, Denial of Benefits, or Discrimination by Reason of Disability

A claim pursuant to the ADA and Rehabilitation Act requires that the "exclusion, denial of benefits, or discrimination is by reason of [the claimant's] disability." *Cadena*, 946 F.3d at 723. The County contends that Ortiz Villagran "fails to state any fact sufficient to show he was intentionally discriminated against because of his amputated foot." (ECF No. 11, p. 10) (emphasis

omitted).  In response, Ortiz Villagran contends that "he arrived at EPCDF with an amputated foot, 'repeatedly' requested accommodations for his foot, and EPCDF staff repeatedly refused to provide him with any accommodations[,] . . . [and, therefore he] has sufficiently ple[d] intentionality against the County."  (ECF No. 13, p. 20).

Ortiz Villagran appears to be attempting to satisfy the third element of a Title II ADA claim through a "failure to accommodate" theory.  *Windham v. Harris Cty.*, 875 F.3d 229, 235 (5th Cir. 2017) ("Windham attempts to satisfy the third prong on a theory of 'failure to accommodate.'").  The County further contends that "Ortiz Villagran's complaint fails to state a claim for an ADA failure to accommodate claim."  (ECF No. 11, p. 10).

Although the "failure to accommodate" theory of discrimination comes from Title I of the ADA, the Fifth Circuit has "recognize[d] that a public entity's failure reasonably to accommodate the known limitations of persons with disabilities can also constitute disability discrimination under Title II."  *Windham*, 875 F.3d at 235.  "A critical component of a Title II claim for failure to accommodate . . . is proof that the disability and its consequential limitations were known by the entity providing public services."  *Id*. (internal quotation marks and alteration omitted).  Further, "[m]ere knowledge of the disability is not enough; the service provider must also have understood the limitations the plaintiff experienced . . . as a result of that disability."  *Id*. (internal quotation marks, alteration, and emphasis omitted).  Therefore, "the burden falls on the plaintiff to specifically identify the disability and resulting limitations, and to request an accommodation in direct and specific terms."  *Id*. (internal quotation marks and citations omitted).  However, if "a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that the disability, resulting limitation, and necessary reasonable accommodation were open, obvious, and apparent to the entity's relevant agents."  *Id*. (internal quotation marks omitted).

A.      *Open, Obvious, and Apparent*

Ortiz Villagran contends that his Complaint "makes detailed allegations regarding the obvious and apparent nature of his disability, his limitations, and a necessary reasonable accommodation." (ECF No. 13, p. 17). The County does not address the open, obvious, and apparent alternative to requesting an accommodation in its Motion or Reply.

First, Ortiz Villagran contends that his disability was open, obvious, and apparent because his left foot was amputated and the EPCDF staff was informed that his left foot was amputated. (ECF No. 13, p. 17). The Court in *Windham* recognized some disabilities "are of a kind that [are] open, obvious, and apparent even if [a plaintiff] had never attempted to explain them." *Windham*, 875 F.3d at 238 (internal quotation marks omitted). This includes "well-understood and outwardly visible disabilities like, say, blindness, deafness, or being wheelchair-bound." *Id*. A partially missing limb, like Ortiz Villagran's amputated left foot, certainly qualifies as a well-understood and outwardly visible disability that would be open, obvious, and apparent.

Second, Ortiz Villagran contends that his limitations were open, obvious, and apparent because he alleges that "he fell to the ground on numerous occasions . . . [and] that the lack of any covering over an amputated limb caused him extreme pain and that he asked for a protective covering other than [a] thin sock." (ECF No. 13, p. 17) (internal quotation marks, alterations, and citations omitted). In *Windham*, the Court found that the plaintiff's cervical stenosis was a "somewhat-obscure condition" and that vague statements could not transform it "into one for which the limitations and necessary accommodation were open, obvious, and apparent. *Windham*, 875 F.3d at 238. The *Windham* Court contrasted the plaintiff's neck condition with the deafness of the plaintiff in *Delano-Pyle* where the "plaintiff's disability was far more readily apparent. That deafness limits a person's ability to understand oral commands is plain; that cervical stenosis limits

a person's ability to look straight ahead for a period of forty-five seconds is not." *Id*. at 239 (citing *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 575-76 (5th Cir. 2002)). The mobility limitations caused by Ortiz Villagran's amputated left foot are plain, making his limitations open, obvious, and apparent.

Finally, Ortiz Villagran contends that there are at least two necessary reasonable accommodations that were open, obvious, and apparent: a protected covering and stabilizing footwear. (ECF No. 13, p. 17). In *Delano-Pyle*, the Fifth Circuit "upheld a jury finding of disability discrimination where police officers failed to accommodate a deaf arrestee even without an explicit request for accommodation." *Windham*, 875 F.3d at 239 (citing *Delano-Pyle*, 302 F.3d at 575-576). The County asserts that "Ortiz Villagran was authorized to use a crutch." (ECF No. 11, p. 11). As noted by Ortiz Villagran's Response, "[t]his is not included in [his] pleadings and should, therefore, not be considered. In fact, this statement directly contradicts [his] statement that he was not provided with any mobility aid." (ECF No. 13, p. 18 n. 11). Accepting the facts alleged in his Complaint that Ortiz Villagran was not given any mobility aid,[12] the Court finds that Ortiz Villagran has alleged necessary reasonable accommodations that were open, obvious, and apparent.

Accordingly, the Court finds that Ortiz Villagran has alleged that his disability, resulting limitation, and necessary reasonable accommodations were open, obvious, and apparent. Therefore, Ortiz Villagran has alleged a claim of disability discrimination based upon an alleged failure to accommodate his disability.

---

[12] *See Ashcroft*, 556 U.S. at 678 (2009).

B.        *Request for Accommodation*

In the alternative, Ortiz Villagran contends that he has "ple[d] that he requested an accommodation." (ECF No. 13, p. 18). The County contends that "[t]he facts ple[d] by Ortiz Villagran fail to constitute the kind of clear and definite request for accommodations that would trigger the duty to accommodate under the ADA." (ECF No. 11, p. 11).

"[B]ecause the ADA does not require clairvoyance, the burden falls on the plaintiff to specifically identify the disability and resulting limitations, and to request an accommodation in direct and specific terms." *Windham*, 875 F.3d at 236-37 (internal quotation marks, citation, and alteration omitted). However, "a plaintiff need not request, or even know, the particular reasonable accommodation he ultimately requires." *Id*. at 237 n. 11. The appropriate accommodation "'is best determined through a flexible, interactive process' involving both the plaintiff and the public entity." *Id*. (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996). In *Windham*, "it [was] enough for [the plaintiff] to ask generally for an alternative to the one-leg stand." *Id*. In Ortiz Villagran's Complaint, he specifically alleges that he "repeatedly asked County employees at the EPCDF for an accommodation for his amputated foot." (ECF No. 1, p. 11). Further, his Complaint identifies several possible accommodations: stabilizing footwear or a protective covering.[13] (*Id*.). Accordingly, the Court finds that Ortiz Villagran has alleged that he requested an accommodation in direct and specific terms. Therefore, the Court finds that Ortiz Villagran has alleged a claim of disability discrimination because of the County's alleged failure to accommodate his disability.

---

[13] The County further identifies another possible accommodation, a crutch. (ECF No. 11, p. 11).

*C.      Compensatory Damages*

"[T]o recover compensatory damages, a plaintiff must also prove that the discrimination was intentional." *Cadena*, 946 F.3d at 724. The County contends that "Ortiz Villagran has failed to allege any intent on the party of El Paso County [and, therefore, d]ismissal of his ADA claims is warranted." (ECF No. 11, p. 11).[14] Ortiz Villagran contends that he has "alleged sufficient facts to establish that the County intentionally failed to provide a reasonable accommodation." (ECF No. 13, p. 19).

While the Fifth Circuit "has hesitated to 'delineate the precise contours' of the standard for showing intentionality[,] . . . the cases to have touched on the issue require 'something more than deliberate indifference[.]'" *Cadena*, 946 F.3d at 724 (quoting *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 575 (5th Cir. 2018)). In *Delano-Pyle v. Victoria County, Texas*, the Fifth Circuit "affirmed a finding of intentional discrimination when a county deputy knew that a hearing-impaired suspect could not understand him, rendering his chosen method of communication ineffective, and the deputy made no attempt to adapt." *Cadena*, 946 F.3d at 724 (citing *Delano-Pyle*, 302 F.3d at 575-76). Similarly, the Fifth Circuit "found that a plaintiff created a genuine dispute as to intentional discrimination when the evidence indicated that 'on several occasions, an interpreter was requested but not provided,' and one of the forms of communication that a hospital used to speak with a hearing-impaired patient was often ineffective." *Id.* (quoting *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x. 180, 185 (5th Cir. 2015)). Finally, the Court in *Cadena* held that "a jury could also reasonably determine that the County's refusal to accommodate Cadena constituted intentional discrimination." *Id.* at 726. The *Cadena* Court found

---

[14] "The ADA creates a private right of action against public entities for both monetary and equitable relief." *Cadena*, 946 F.3d at 724 n. 2. Ortiz Villagran's Complaint seeks compensatory damages, exemplary damages, and attorney's fees. (ECF No. 1, p. 14).

that the facts alleged "are analogous to those in *Delano-Pyle* and *Perez*, in which defendants continued to refuse the requested accommodation despite indications that further accommodation was necessary." *Id.* (citing *Delano-Pyle*, 302 F.3d at 575–76; *Perez*, 624 F. App'x. at 185).

Ortiz Villagran's Complaint alleges that the County refused his requested accommodations despite indications that further accommodations were necessary. His Complaint alleges that Ortiz Villagran arrived at the El Paso County detention facility with a stabilizing boot for his amputated left foot which was then taken away. (ECF No. 1, p. 11). Ortiz Villagran further alleges that the staff at the El Paso County Detention Facility were informed that he had his left foot amputated. (*Id.* at 10). Ortiz Villagran also contends that despite "repeatedly ask[ing] County employees at the EPCDF for an accommodation for his amputated foot[,]" Ortiz Villagran was not provided "with any stabilizing footwear or even a protective covering other than [a] thin sock" by the El Paso County Detention Facility employees. (*Id.* at 11). Finally, Ortiz Villagran alleges that as a result, his "amputated foot was in contact with the bare cell floor which was often cold. This caused him extreme pain in his residual limb and caused him to fall to the ground on numerous occasions." (*Id.*). Accordingly, the Court finds that Ortiz Villagran has alleged that the County refused to accommodate his disability, despite indications that such accommodations were necessary.

### d.     Punitive Damages

Finally, the County's Motion contends that punitive damages are unavailable to Ortiz Villagran on either his Section 1983 Claim or ADA and Rehabilitation Act claims. Ortiz Villagran "does not challenge Section V of Defendants' Motion regarding punitive damages." (ECF No. 13, p. 3, n. 1).

Punitive damages may not be awarded on any of Ortiz Villagran's claims against the County. In *Barnes v. Gorman*, the Supreme Court held punitive damages may not be awarded in suits brought under the ADA and the Rehabilitation Act. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002). Further, the Supreme Court held in *City of Newport v. Fact Concerts, Inc.* "that a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Accordingly, the Court finds that the County's Motion should be granted with respect to any claims for punitive damages.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Ortiz Villagran's Section 1983 claim is not barred by *Heck*'s favorable termination rule. The Court further finds that Ortiz Villagran has alleged an official policy or custom that was the moving force of the alleged violation of his constitutional rights, as required by *Monell*, for municipal liability.[15] The Court also finds that Ortiz Villagran has alleged a claim of disability discrimination based upon the County's alleged failure to accommodate his disability, in violation of the ADA and the Rehabilitation Act. Finally, the Court finds that none of Ortiz Villagran's claims against the County allow for the recovery of punitive damages.

Accordingly, the Court **RECOMMENDS** that the County's "Rule 12(b) Motion to Dismiss All Claims Against El Paso County" (ECF No. 11) be:

- **DENIED** as to Ortiz Villagran's Section 1983 Claim;

- **DENIED** as to Ortiz Villagran's Claim pursuant to the ADA and the Rehabilitation Act; and

---

[15] As addressed above, Ortiz Villagran has alleged an official policy or custom that was the moving force of the alleged violation of his constitutional rights as to the "Release Policy" and the "No Judgment Policy" but not as to the "Over-Detention Custom."

- **GRANTED** as to Ortiz Villagran's claim for punitive damages.

**SIGNED** and **ENTERED** this 13th day of April, 2020.

_____
ANNE T. BERTON
UNITED STATES MAGISTRATE JUDGE


## NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**