IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| NOE DE JESUS ORTIZ VILLAGRAN, | § § | |
| *Plaintiff*, | § § | |
| v. | § § | EP-19-CV-00336-DCG |
| COUNTY OF EL PASO, TEXAS, and the UNITED STATES OF AMERICA, | § § § § | |
| *Defendants*. | § § | |

# MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant County of El Paso, Texas. Mot. to Dismiss, ECF No. 11. For the following reasons, the motion is denied in part and granted in part.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Noe De Jesus Ortiz Villagran, a citizen of Guatemala, entered the United States from the Republic of Mexico by crossing the Rio Grande River approximately 3.13 miles east of the Bridge of the Americas Port of Entry in El Paso, Texas, on June 4, 2018. *See United States v. Ortiz-Villagran*, EP-18-MJ-4188-MAT, ECF No. 1 (Petty Documents). He was arrested and charged with knowingly entering the United States at a place not designated by immigration officers as a port of entry, in violation of 8 U.S.C. § 1325(a)(1). *Id.* He claimed he was "seeking asylum" at the time he arrived in the United States. Pl.'s Compl. at 1, ECF No. 1.

The United States Marshals Service relies on an inter-governmental agreement to house federal detainees in facilities operated by Defendant County of El Paso, Texas. *Id.* at ¶ 6; *see also* Mot. to Dismiss, Ex. A (Detention Services Intergovernmental Agreement). Under its terms, the Marshals Service may quarter the following categories of people in the El Paso County Detention Facility (EPCDF): "(1) persons charged with federal offenses . . . while

awaiting trial; (2) persons . . . sentenced and . . . awaiting . . . transportation to a Bureau of Prisons facility; [and] (3) . . . individuals . . . awaiting a hearing on their immigration status or deportation." Pl.'s Compl. at ¶ 6; *see also* Mot. to Dismiss, Ex. A (Detention Services Intergovernmental Agreement) at 18.  Under its terms, the Marshals Service also requires the County "to release federal detainees only to law enforcement officers of the Federal Government . . ." Mot. to Dismiss, Ex. A (Detention Services Intergovernmental Agreement) at 20.

Relying on the inter-governmental agreement, federal agents delivered Ortiz Villagran to the EPCDF early on the morning of June 5, 2018, to await federal criminal proceedings.  Pl.'s Compl. at ¶ 17.  At the time of his delivery to the EPCDF, the agents provided county officials with a Department of Homeland Security (DHS) detainer, Form I-247.  *Id*. at ¶ 19.  The detainer contained a written request for the county officials to maintain custody of Ortiz Villagran for a period "not to exceed 48 hours beyond the time when he/she would otherwise have been released from . . . custody . . ." *Id*. (quoting Form I-247).

Ortiz Villagran appeared before a United States Magistrate Judge and pled guilty to "improper entry by an alien" on June 15, 2018.  *United States v. Ortiz-Villagran*, EP-18-MJ-4188-MAT, ECF No. 1 (Petty Documents), p. 6 (J. Crim. Case).  He was sentenced to 35 days' confinement with credit for the ten days already served.  "Therefore should have been released from the EPCDF on July 9, 2018 or, under the terms of the DHS detainer, 48 hours thereafter." Pl.'s Compl. at ¶ 22.  But he was not released from the EPCDF to DHS custody until August 24, 2018—or 46 days after he completed his federal sentence. *Id*. at ¶ 33.  He remained in DHS custody for a little over a month until he was released on bond.[1]  *Id*. at ¶ 34.

---

[1] *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018) ("Both [8 U.S.C.] § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens.  Aliens covered by § 1225(b)(1) are normally ordered removed 'without further hearing or review' pursuant to an expedited removal process.  § 1225(b)(1)(A)(i).  But if

Ortiz Villagran, through his counsel, alleges in a civil rights complaint under 42 U.S.C. § 1983 that the County "unlawfully detained [him] in the EPDC for a period of 46 days—from July 9, 2018 to August 24, 2018—in violation of his rights under the Fourth, Fifth, Eighth, and Fourteenth amendments of the U.S. Constitution." *Id.* at 1.  He maintains the "[o]verdetention" or "extended detention" occurred after he completed his federal sentence for improperly entering the United States.  *Id*. at ¶¶ 22–23, 27, 38–39.  He adds he "never received a notice to appear before an immigration judge, and never received an immigration order of removal."  *Id*. at ¶ 25.  Moreover, "[h]e was not provided a bond, judicial review, or provided any due process of law." *Id.*  He argues the inter-governmental agreement was a "facially unconstitutional policy [which] was the moving force of [his] unlawful overdetention." *Id*.  at 8.  He also asserts the County failed to accommodate his disability—the loss of his left foot—and violated his rights under Title II of the Americans with Disabilities Act (ADA) and the Rehabilitation Act.  *Id*. at 2; *id.* at ¶¶ 68–70.  He seeks compensatory and punitive damages.  *Id*. at 14–15.

The County moves to dismiss all of Ortiz Villagran's claims against it under Federal Rule of Civil Procedure 12(b)(6).  Mot. to Dismiss, ECF No. 11.  It notes the Supreme Court held in *Heck v. Humphrey*, 512 U.S. 477 (1994), that a plaintiff must prove his conviction or sentence was "reversed through appeal, expungement, or a writ of habeas corpus" before seeking damages for an unconstitutional imprisonment under § 1983.  *Id*. at 4 (quoting *Heck*, 512 U.S. at 486–87).

---

a § 1225(b)(1) alien 'indicates either an intention to apply for asylum . . . or a fear of persecution,' then that alien is referred for an asylum interview.  § 1225(b)(1)(A)(ii).  If an immigration officer determines after that interview that the alien has a credible fear of persecution, 'the alien shall be detained for further consideration of the application for asylum.'  § 1225(b)(1)(B)(ii).  Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those aliens 'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country.  § 1225(b)(2)(A).").

It observes Ortiz Villagran's conviction or sentence was never "reversed on direct appeal, expunged by executive order, declared invalid by a . . . tribunal." *Id*. (quoting *Heck*, 512 U.S. at 487). It argues "a . . . sentence that has not been so invalidated is not cognizable under § 1983." *Id*. (quoting *Heck*, 512 U.S. at 487). In sum, it asserts the *Heck* "favorable-termination rule" bars Ortiz Villagran's unconstitutional imprisonment claim. *Id*. at 1, 4. The County also contends Ortiz Villagran failed to plead an unconstitutional County policy or custom provided the moving force behind any alleged constitutional violation. *Id*. at 1, 5–8 (citing *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Hence, it avers the County has no liability on Ortiz Villagran's unconstitutional imprisonment claim. The County further asserts Ortiz Villagran did not state a claim under the ADA based on a failure-to-accommodate theory—and he makes insufficient allegations of inadequate medical care to entitle him to relief. *Id*. at 1, 9–11. Finally, it maintains Ortiz Villagran cannot recover punitive damages from the County. *Id*. at 1, 11.

In response, Ortiz Villagran maintains his "§1983 claim against the County does not challenge or seek to invalidate his underlying conviction, judgment, or the sentence rendered." Pl.'s Resp. to Mot. to Dismiss at 6, ECF No. 13. His "§1983 claim against the County focuses solely on the County's failure—as jailer—to release [him] based on the County's policy, practice, or custom." *Id.* at 6, 9. He observes the *Heck* Court explained "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id*. at 5 (quoting *Heck*, 512 U.S. at 487).

## APPLICABLE LAW

Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a Rule 12(b)(6) motion to

dismiss, a "court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff [but] may not look beyond the pleadings in ruling on the motion." *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996) (citing *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir.1992)). The court may, however, "rely on documents incorporated into the complaint by reference[] and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (internal quotes and citations omitted).

A complaint will survive a motion to dismiss if its facts, accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet the "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The Court's task, then, is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (*en banc*) (citation and internal quotation marks omitted). "In other words, we look to see whether [Ortiz Villagran's] pleadings, including [his] legal arguments, plausibly state a claim." *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012).

## ANALYSIS

The Magistrate Judge to whom the Court referred this matter recommends that the Court deny the County's motion to dismiss Ortiz Villagran's substantive claims. *Ortiz Villagran v. United States*, 2020 WL 1854832, at *14 (W.D. Tex. Apr. 13, 2020). *See* 28 U.S.C. §

636(b)(1)(B) (permitting a district court, on its own motion, to refer a pending matter to a United States Magistrate Judge for a report and recommendation).  But she adds "none of Ortiz Villagran's claims against the County allow for the recovery of punitive damages."  *Ortiz Villagran*, 2020 WL 1854832, at *14.

The Magistrate Judge reasons "Ortiz Villagran 'does not challenge or seek to invalidate his underlying conviction, judgment, or the sentence rendered.'"  *Id*. at *5 (quoting Pl.'s Resp. to Mot. to Dismiss at 6).  For this reason, she finds his § 1983 claim is "both temporally and conceptually distinct from his underlying conviction and sentence."  *Id*.  And since his "[c]laim against the County would not necessarily imply the invalidity of his conviction or sentence . . . *Heck's* favorable termination requirement is not implicated."  *Id.*  She relies on two recent district court opinions—*Traweek v. Gusman*, 414 F. Supp. 3d 847 (E.D. La. 2019), and *McNeal v. La. Dep't of Pub. Safety & Corr.*, No. CV 18-736-JWD-EWD, 2020 WL 798321 (M.D. La. Feb. 18, 2020)—in reaching her conclusion.

The Magistrate Judge observes, "pursuant to an inter-governmental agreement between the Marshals Service and El Paso County, 'the County is required to keep federal detainees in its jail without regard to any lawful basis for the federal detainee's detention.'"  *Id*. at *7.  She concludes this inter-agency agreement states the County's official policy and "Ortiz Villagran has alleged . . . he was physically over-detained . . . by the . . . County Sheriff's Office as result of the . . . policy."  *Id*. at *8.

The Magistrate Judge also finds "Ortiz Villagran has alleged that his disability, resulting limitation, and necessary reasonable accommodations were open, obvious, and apparent. Therefore, Ortiz Villagran has alleged a claim of disability discrimination based upon an alleged failure to accommodate his disability."  *Id*. at *13.

Finally, the Magistrate Judge notes "punitive damages may not be awarded in suits brought under the ADA and the Rehabilitation Act." *Id*. at *14 (citing *Barnes v. Gorman*, 536 U.S. 181, 189 (2002)).  Moreover, "'a municipality is immune from punitive damages under 42 U.S.C. § 1983.'" *Id*. (quoting *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)).

Parties have fourteen days to file written objections to a magistrate judge's findings, conclusions, and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  A party who files timely written objections is entitled to a "de novo" review of those portions of the report to which the party objects.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).  A district court need not, however, consider "'frivolous, conclusive, or general objections.'"  *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc)).  As to other portions of the report or when a party does not file written objections, the Court applies a "clearly erroneous, abuse of discretion and contrary to law" standard of review.  *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).  After completing its review, the Court may accept, reject, or modify a report, in whole or in part.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

The County challenges only one aspect of the Magistrate Judge's recommended disposition—whether *Heck* bars Plaintiff's § 1983 claim.  Def.'s Obj. at 2–6, ECF No. 28.  It argues "the magistrate judge's conclusion was contrary to binding Fifth Circuit precedent."  *Id*. at 2.

Ortiz Villagran alleges the County detained him after he completed his federal sentence under the terms of the inter-governmental agreement because the Marshals Service "or an agency designated by the Marshals [Service]" failed to "pick him up."  Pl.'s Compl. at ¶ 31.  He claims

he "was finally released to DHS custody" for immigration proceedings and ultimately "released on bond from DHS custody within a little over one month after his release from the EPCDF." *Id*.

In *Heck*, the Supreme Court announced a precondition for a defendant to recover damages on an unconstitutional imprisonment claim—the favorable-termination rule:

> We hold that, in order to recover damages for allegedly unconstitutional . . . imprisonment . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck*, 512 U.S. at 486–87.  Thus, unless an authorized tribunal or executive body overturns or otherwise invalidates a plaintiff's *conviction or sentence*, his claim of unconstitutional imprisonment "is not cognizable under §1983." *Id*. at 487.

To be clear, Ortiz Villagran does not claim the County over-detained him based on his *conviction and sentence* in EP-18-MJ-4188-MAT.  Such a claim would be *Heck* barred in the Fifth Circuit.  *See Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000) (holding unequivocally § 1983 claimants who could no longer seek habeas relief because they were no longer confined must still comply with *Heck's* favorable-termination requirement); *Black v. Hathaway*, 616 F. App'x 650, 654 (5th Cir. 2015) ("[T]he application of the favorable-termination rule after a prisoner's release remains unsettled. *Muhammad* [*v. Close*, 540 U.S. 749 (2004),] failed to effect a change in the law that would allow this panel to revisit the court's decision in *Randell*.  Therefore, Black's argument that *Heck* does not bar his § 1983 suit is unavailing.").

Instead, Ortiz Villagran claims the County violated his rights when it detained him—in accordance with the terms of an inter-governmental agreement—after he completed his sentence and before it released him to DHS custody to await proceedings on his asylum claim.  *See* Pl.'s Compl. ¶¶ 6–8, 11–12, 31, 33–34, 38, 51; *see also* Pl.'s Resp. to Mot. to Dismiss ("Instead, the

§1983 claim against the County focuses solely on the County's failure – as jailer – to release Plaintiff based on the County's policy, practice, or custom."); Pl.'s Resp. to Cty.'s Objs. to R&R at 4 ("Instead, Ortiz's claims address the action of Defendant County after that sentence – properly calculated – concluded."), ECF No. 31.  In other words, he claims the County violated his Fourth, Fifth, Eighth, and Fourteenth Amendments rights when it held him pursuant to the requirements of what he describes as an unconstitutional inter-governmental agreement. Consequently, because "the plaintiff's action . . . will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Heck*, 512 U.S. at 487.

Furthermore, to the extent Ortiz Villagran challenges his detention by the County because he was awaiting asylum or other immigration proceedings, *see, e.g.*, Pl.'s Compl. ¶¶ 26, 28, 33–34, the Court notes "[a]dministrative immigration cases are civil," not criminal, proceedings, *Ali v. Gonzales*, 440 F.3d 678, 681 (5th Cir. 2006); *see also Harisiades v. Shaughnessy*, 342 U.S. 580, 594 (1952) ("Deportation, however severe its consequences, has been consistently classified as a civil rather than a criminal procedure."); *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984) ("A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry, though entering or remaining unlawfully in this country is itself a crime." (citing 8 U.S.C. §§ 1302, 1306, 1325)).  Thus, a detained alien awaiting immigration proceedings is not a prisoner within the meaning of criminal law. *Ojo v. INS*, 106 F.3d 680, 683 (5th Cir. 1997).  When an alien attacks his detention while awaiting asylum or removal proceedings, he is not directly challenging a criminal conviction or sentence.

The *Heck* favorable-termination rule is undeniably not limited exclusively to claims challenging the validity of a criminal conviction or sentence.  It is applicable to § 1983 claims

challenging the procedures used to deprive prison inmates of good time credits. *Edwards v. Balisok*, 520 U.S. 641 (1997). It is germane to § 1983 claims challenging civil commitments under California's Sexually Violent Predators Act. *Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1137 (9th Cir. 2005). It is also pertinent to § 1983 claims challenging the coercive nature of pretrial detainee confinement prior to giving statements regarding pending charges. *Hamilton v. Lyons*, 74 F.3d 99, 102–03 (5th Cir.1996).

Neither the Supreme Court nor the Fifth Circuit has ruled on the applicability of the *Heck* favorable-termination rule to immigration orders. Indeed, the Fifth Circuit, when confronted with the issue, declined to rule on whether the *Heck* favorable-termination rule applied to immigration orders. *See Humphries v. Various Fed. USINS Employees*, 164 F.3d 936, 946 (5th Cir. 1999).[2] There, the lower court dismissed under *Heck* an alien's § 1983 claim that he was mistreated and subjected to various constitutional violations while in detention awaiting removal,[3] after an immigration judge had ordered him removed. *Id.* at 939–40. The Fifth Circuit recognized that "the question of whether [to] apply the rationale of *Heck* in the context of [removal] is an issue of first impression in this Circuit." *Id.* at 940. Without squarely answering the question, the Court explained that "even if *Heck* were to apply in the context of immigration orders, it would, by analogy, bar only those claims that 'necessarily imply' the invalidity of an INS or BIA order." *Id.* at 946. Ultimately, the Fifth Circuit decided that "*Heck* did not bar" the

---

[2] *But see Cohen v. Clemens*, 321 F. App'x 739, 742 (10th Cir. 2009) (concluding that because the plaintiff "would need to prove that his [immigration] detention was unlawful in order to receive an award of damages for that detention, the district court correctly concluded that *Heck* applied to bar [plaintiff's] *Bivens* action).

[3] *See De La Paz v. Coy*, 786 F.3d 367, 374 n.6 (5th Cir. 2015) ("Before the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 105–201, 110 Stat. 3009 (1996), removal was described as either 'exclusion' or 'deportation.' The *Humphries* decision uses the term 'exclusion' throughout. For simplicity's sake, we will use 'removal' here." (internal citation omitted)).

plaintiff's claim. *De La Paz*, 786 F.3d at 374 (discussing *Humphries*).

Ortiz Villagran notably does not allege he was held at the EPCDF for 44 days—from July 11, 2018 to August 24, 2018—based on a Department of Homeland Security or Department of Justice order. Indeed, he avers he "never received a notice to appear before an immigration judge, and never received an immigration order of removal." Pl.'s Compl. at ¶ 25. Moreover, he asserts "[h]e was not provided a bond, judicial review, or . . . any due process of law." *Id.* He argues the inter-governmental agreement was a "facially unconstitutional policy [which] was the moving force of [his] unlawful overdetention." *Id*. at 8. In other words, he asserts the County "held him illegally and unconstitutionally as a prisoner [as] a direct result of the County policies that prohibit releasing federal detainees except to employees of federal agencies—even if that person is being held unconstitutionally." *Id.* at 1.

Consequently, if Ortiz Villagran ultimately prevails, the result would *not* necessarily invalidate a judicial or administrative order. Ortiz Villagran pleads sufficient facts to state an unlawful confinement claim which is plausible on its face. The Magistrate Judge's conclusion that the *Heck* favorable-termination rule did not bar his claim is *not*—as the County suggests—contrary to binding Fifth Circuit precedent.

## CONCLUSION AND ORDERS

After completing a de novo review of those portions of the report to which the County objects, the Court concludes it should overrule the objections. As to other portions of the report, the Court concludes the findings and conclusions are not clearly erroneous, an abuse of discretion or contrary to law. Accordingly, the Court enters the following orders:

**IT IS ORDERED** that the County's "Objections to the Report & Recommendation of the Magistrate Judge" (ECF No. 28) are **OVERRULED**.

**IT IS FURTHER ORDERED** that the "Report and Recommendation of the Magistrate Judge" (ECF No. 25) is **ACCEPTED**.

**IT IS FURTHER ORDERED** that the County's "Rule 12(b) Motion to Dismiss All Claims against El Paso County" (ECF No. 11) is **DENIED** with regard to Ortiz Villagran's claim that the County unconstitutionally imprisoned him, in violation of his civil rights; **DENIED** with regard to Ortiz Villagran's claim that the County failed to accommodate his disability; and **GRANTED** with regard to Ortiz Villagran's claim that he is entitled to punitive damages. Consequently, Ortiz Villagran's request for punitive damages from the County is **DENIED**.

**IT IS FINALLY ORDERED** that this matter is returned to the Magistrate Judge for further proceedings consistent with this order.

So ORDERED and SIGNED this __2nd__ day of July 2020.

_____
**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**