IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| NOE DE JESUS ORTIZ VILLAGRAN, § <br> Plaintiff, § <br> § <br> v. § <br> § <br> UNITED STATES OF AMERICA, § <br> COUNTY OF EL PASO, TEXAS, § <br> Defendants. § <br> § | No. EP-19-CV-00336-DCG-ATB |

**REPORT AND RECOMMENDATION
OF THE MAGISTRATE JUDGE**

On this day, the Court considered "Defendant United States' Motion to Dismiss" ("Motion") filed by Defendant United States of America ("United States") on April 2, 2020. (ECF No. 24). The matter was referred to this Court pursuant to the Standing Order referring prisoner civil rights cases to United States Magistrate Judges.

For the reasons set forth below, the Court **RECOMMENDS** that "Defendant United States' Motion to Dismiss" be **DENIED**.

## I.   BACKGROUND

### a.   Procedural Background

Plaintiff Noe De Jesus Ortiz Villagran ("Ortiz Villagran") filed his complaint ("Complaint") on November 21, 2019, alleging that the United States falsely imprisoned him in July and August of 2018. (ECF No. 1). In his Complaint, Ortiz Villagran alleges that the United States over-detained him, and seeks to bring a claim for false imprisonment pursuant to the Federal Tort Claims Act ("FTCA") for this alleged over-detention. (*Id*. at 11).

1

The United States filed its Motion on April 2, 2020, seeking dismissal of Ortiz Villagran's claim. (ECF No. 24). Ortiz Villagran filed his response ("Response") on April 23, 2020.[1] (ECF No. 27). The United States filed its reply ("Reply") on May 7, 2020.[2] (ECF No. 30).

### b.   Factual Background[3]

In his Complaint, Ortiz Villagran seeks to bring a Federal Tort Claims Act action for false imprisonment against the United States for his alleged over-detention at the El Paso County Detention Facility ("EPCDF"), after the completion of his sentence for violation of 8 U.S.C. § 1325. (ECF No. 1, p. 13-14). Ortiz Villagran alleges in his Complaint that on June 15, 2018, he pled guilty to violating 8 U.S.C. § 1325 and was sentenced to thirty-five days detention, with credit for time served. (ECF No. 1, p. 5). Further, Ortiz Villagran alleges that he should have been released from the EPCDF when he completed his sentence on July 9, 2018, or by July 11, 2018, because the immigration detainer permitted the EPCDF to hold him for an additional forty-eight hours at the conclusion of his sentence. (*Id.*). Ortiz Villagran then contends that he was finally released from the EPCDF into the custody of the Department of Homeland Security ("DHS") on August 24, 2018. (*Id*. at 6). Ortiz Villagran alleges that because he was not released until August 24, 2018, he was detained at the El Paso County Detention Facility for forty-six days beyond the date he completed his sentence. (*Id*.).[4]

Ortiz Villagran contends that during his time at the EPCDF, he was in the custody of the United States Marshals Service ("Marshals"). (ECF No. 1, p. 1, 5, 7, 14). Further, Ortiz Villagran alleges that the Marshals and the County of El Paso ("County") have a "Housing Prisoners

---

[1] The Court granted Ortiz Villagran an extension to file his Response. *See* (Text Order dated April 15, 2020).
[2] The Court granted the United States an extension to file its Reply. *See* (Text Order dated April 30, 2020).
[3] While recounting the factual background, the Court addresses only the facts relevant to the immediate Report and Recommendation.
[4] In his Complaint, Ortiz Villagran alleges that his sentence was completed on July 9, 2018. (ECF No. 1, p. 5). Further, because of the detainer, Ortiz Villagran contends that he should have been released from the EPCDF no later than July 11, 2018. (ECF No. 1, p. 5).

Agreement" ("Agreement") whereby the County agrees to house federal detainees at the EPCDF and:

> to release federal detainees only to law enforcement officers of the Federal Government agency initially committing the federal detainee (i.e. Drug Enforcement Administration, Immigration and Custom Enforcement, etc.) or to a Deputy United States Marshal (DUSM). Those federal detainees who are remanded to custody by a DUSM may only be released to a DUSM or an agent specified by the DUSM of the Judicial District.

(*Id.* at 2-3) (emphasis omitted).

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint when a defendant shows that the plaintiff has failed to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual matter contained in the complaint must allege actual facts, not legal conclusions masquerading as facts. *Id.* (citing *Twombly*, 550 U.S. at 555) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").

To resolve a Rule 12(b)(6) motion, courts must determine "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (citation omitted). A complaint states a "plausible claim for relief" when the factual allegations contained therein infer actual misconduct on the part of the defendant, not a "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. The complaint "'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when

assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

## III.   ANALYSIS

In its Motion, the United States contends that Ortiz Villagran has "failed to state a claim against Defendant United States." (ECF No. 24, p. 3).

Generally, "[t]he United States has sovereign immunity from any lawsuit, unless that sovereign immunity has been waived." *M.D.C.G. v. United States*, 956 F.3d 762, 767–68 (5th Cir. 2020). However, "[t]he FTCA is a limited waiver of sovereign immunity that allows plaintiffs to bring state law tort actions against the federal government." *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016). "This waiver of sovereign immunity applies to claims that 'investigative or law enforcement officers' have committed the torts of 'assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.'" *M.D.C.G.*, 956 F.3d at 768 (quoting 28 U.S.C. § 2680(h)).

Ortiz Villagran's FTCA claim for false imprisonment is governed by Texas law. "When a plaintiff files an FTCA claim, the federal government waives sovereignty for suit 'if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Najera v. United States*, 926 F.3d 140, 144 (5th Cir. 2019) (quoting 28 U.S.C. § 1346(b)(1)). The "law of the place" means "the law of the state where the tort took place." *Id.* (citing *Johnson v. Sawyer*, 47 F.3d 716, 727 (5th Cir. 1995)). In this case, Ortiz Villagran alleges that his false imprisonment occurred at the El Paso County Detention Facility which is located in El Paso, Texas. (ECF No. 1, p. 14). Accordingly, Ortiz Villagran must satisfy the elements of a false imprisonment claim under Texas law. *Najera*, 926 F.3d at 144 ("In this case, we apply Texas law.").

"In order to establish a valid false imprisonment claim under Texas law, [a plaintiff] must show: '(1) willful detention, (2) without consent, and (3) without authority of law.'" *Id*. (quoting *Davila v. United States*, 713 F.3d 248, 262 (5th Cir. 2013)).

In its Motion, the United States contends that Ortiz Villagran "cannot show Defendant United States willfully detained him at the EPCDF from on or about July 11, 2018[,] until his release from the EPCDF on or about August 24, 2018." (ECF No. 24, p. 4).[5]

"The meaning of 'willfully' varies depending upon the context." *United States v. Arditti*, 955 F.2d 331, 340 (5th Cir. 1992). "[I]n common usage the word 'willful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional' and that in law the word generally refers to conduct that is not merely negligent." *Id.* (*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

In Texas, "[f]alse imprisonment's first element [of willful detention] may . . . be satisfied by conduct that is intended to cause one to be detained, and in fact causes the detention . . . ." *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 507 (Tex. 2002). In *Nguyen v. United States*, the district court explained "that the 'willful detention' element simply refers to whether the named defendant purposefully caused the plaintiff to be detained." No. 3:00-CV-0528-R, 2001 WL 637573, at *6 (N.D. Tex. June 5, 2001), aff'd, 65 F. App'x 509 (5th Cir. 2003) (citing *Tovar v. United States*, No. CIV.A.3:98-CV-1682-D, 2000 WL 425170, at *6 (N.D. Tex. Apr. 18, 2000), aff'd, 244 F.3d 135 (5th Cir. 2000)).

---

[5] The United States' Motion only addresses the "willful detention" element of a false imprisonment claim and does not appear to challenge the other two elements of a claim for false imprisonment. The United States contends that "Plaintiff fails to show how Defendant United States willfully detained him longer than authorized by law. Accordingly, Plaintiff's false imprisonment cause of action against Defendant United States must fail." (ECF No. 24, p. 6).

5

Accepting the facts alleged in his Complaint as true, the Court finds that Ortiz Villagran has stated a claim for false imprisonment against the United States. In his Complaint, Ortiz Villagran contends that, during the time he was physically detained at the EPCDF, he was in the custody of the United States Marshals Service. (ECF No. 1, p. 1, 5, 7, 14). Further, pursuant to the Agreement between the County and the Marshals, Ortiz Villagran argues that the County could only release those prisoners remanded into Marshal custody "to a DUSM or an agent specified by the DUSM of the Judicial District." (*Id.* at 3). Finally, Ortiz Villagran contends that during the period of his alleged over-detention at the EPCDF no one "from the Marshals or an agency designated by the Marshals remove[d] Ortiz Villagran from the EPCDF. Nor did Marshals employees request that any other federal law enforcement agencies pick up Ortiz Villagran from the EPCDF." (*Id.* at 8).

The arguments advanced by the United States in its Motion do not support the conclusion that Ortiz Villagran failed to state a claim against it. In its Motion, the United States raises two main arguments: those relating to the detainer lodged by Customs and Border Protection ("CBP") and those related to Ortiz Villagran seeking his release from custody.

a.   CBP Detainer

For the detainer, the United States argues that "CBP law enforcement officers, by the terms of the contract between the USMS and the County of El Paso, Texas, were authorized to take timely custody of the Plaintiff if and when notified by the EPCDF." (ECF No. 24, p. 5). In his Response, Ortiz Villagran contends that "the Agreement between the Marshals and the County states that federal detainees who are 'remanded to custody by a [Deputy United States Marshal] (DUSM) may only be released [by the County] to a DUSM or agent specified by the DUSM.'" (ECF No. 27, p. 6) (quoting (ECF No. 1, p. 3)) (alteration in original). Ortiz Villagran concludes

6

that "[t]herefore, under the terms of the Agreement, as pleaded, it was Marshals employees – not CBP officers – who had an obligation under the Agreement to ensure Ortiz's release upon his sentencing." (*Id.*). In its Reply, the United States asserts that Ortiz Villagran's "interpretation wholly ignores the first portion of the quoted provision which authorizes the release of federal detainees by the EPCDF to officers of the federal agency which initially committing [sic] the detainee or to a DUSM." (ECF No. 30, p. 4) (emphasis omitted).

Accepting the terms of the Agreement as alleged in the Complaint as true, Ortiz Villagran contends that the EPCDF was contractually prohibited from releasing him into CBP custody without approval from the Marshals. Ortiz Villagran alleges that he was in Marshal custody during his time at the EPCDF. (ECF No. 1, p. 1, 5, 7, 14). Further, Ortiz Villagran contends that the Agreement between the County and the Marshals required the County:

> to release federal detainees only to law enforcement officers of the Federal Government agency initially committing the federal detainee (i.e. Drug Enforcement Administration, Immigration and Custom Enforcement, etc.) or to a Deputy United States Marshal (DUSM). Those federal detainees who are remanded to custody by a DUSM may only be released to a DUSM or an agent specified by the DUSM of the Judicial District.

(*Id.* at 3) (emphasis omitted). Ortiz Villagran argues that once a federal detainee is in Marshal custody, EPCDF can only release the detainee "to a DUSM or an agent specified by the DUSM of the Judicial District." (*Id.* at 3). Further, Ortiz Villagran contends that because of the terms of the agreement, "it was Marshals employees – not CBP officers – who had an obligation under the Agreement to ensure Ortiz [Villagran]'s release." (ECF No. 27, p. 6). Accepting the terms of the Agreement as alleged in the Complaint as true, even if CBP could have retrieved Ortiz Villagran from the EPCDF when they initially committed him, the Court finds that CBP lost that

ability once Ortiz Villagran was *remanded* into Marshal custody.[6]  Accordingly, the Court further finds that as alleged in the Complaint, it was only with the consent of the Marshals that CBP could have retrieved Ortiz Villagran from the EPCDF upon the completion of his sentence for violating 8 U.S.C. § 1325.

Further, Ortiz Villagran contends that, even if CBP could have taken Ortiz Villagran into immigration custody after the completion of his sentence pursuant to the detainer and with Marshal consent, CBP was not required to do so.  (ECF No. 27, p. 6).  Detainers are a "a request that [the agency with custody of an alien] advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible."  8 C.F.R. § 287.7(a).  Despite having the authority to lodge a detainer, there is nothing that requires the agency to actually take custody of the alien. *See Royer v. I.N.S.,* 730 F.Supp. 588, 591 (S.D.N.Y. 1990).  Accepting the facts as alleged in the Complaint as true, the Court finds that Ortiz Villagran remained physically at the EPCDF under Marshal custody until such time as he was released into CBP custody.  Further, under the terms of the Agreement as alleged in the Complaint, the Court finds that CBP was not required or authorized to assume custody of Ortiz Villagran until allowed to do so by the Marshals.

The United States further argues that "the detainer placed the burden on the EPCDF to notify CBP prior to Plaintiff's scheduled release so that CBP could arrange or assume custody of Plaintiff."  (ECF No. 24, p. 5).  Assuming, *arguendo*, that the detainer imposed a burden on the EPCDF to notify CBP before Ortiz Villagran's release, the United States fails to identify how that alters Ortiz Villagran's contention that he was in Marshal custody until he was released to DHS

---

[6] In his Complaint, Ortiz Villagran alleges that "on June 5, [2018], CBP agents . . . and Marshal . . . Hernandez remitted Ortiz Villagran to the EPCDF . . . . At that time, he was housed in the EPCDF *and under Marshals custody*."  (ECF No. 1, p. 5) (emphasis added).

custody on August 24, 2018. Accepting as true Ortiz Villagran's contention that he was in Marshal custody while at the EPCDF, the Court finds that the detainer would have merely required the EPCDF to notify DHS about Ortiz Villagran's impending release before he was released to the Marshals or the agent specified by the Marshals, as required by the Agreement.

  b. Release from Custody

Finally, the United States argues that Ortiz Villagran's "Complaint is . . . devoid of any efforts to seek his release from federal officials while he was detained at the EPCDF." (ECF No. 24, p. 5). The United States contends that all efforts to secure Ortiz Villagran's release were directed towards the EPCDF.[7] (*Id.*). "[A] jailer has *a duty* to ensure that inmates are timely released from prison." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (emphasis added). A jailer's "functions include not only the duty to protect a prisoner, but also the duty to effect his timely release." *Whirl v. Kern*, 407 F.2d 781, 792 (5th Cir. 1969). In this case, Ortiz Villagran alleges that he was in Marshals custody during his time at the EPCDF. (ECF No. 1, p. 1, 5, 7, 14). Ortiz Villagran further contends that the Marshals "did not send an agent to recover Ortiz Villagran from the EPCDF upon termination of his sentence, nor did they designate another federal agency to release him. (*Id.* at 14). Accepting that allegation as true, even though Ortiz Villagran's efforts to secure his release were not directed towards the Marshals, the Court finds that the Marshals had an obligation to ensure Ortiz Villagran's timely release upon the completion of his sentence for violating 8 U.S.C. § 1325 because he was in their custody. *See Porter*, 659 F.3d at 445.

Pursuant to the terms of the Agreement as alleged in the Complaint, Ortiz Villagran contends that the Marshals intended for all federal detainees in their custody and physically housed

---

[7] In his Complaint, Ortiz Villagran alleges that his children retained an attorney to located him and the attorney "called the EPCDF . . . ." (ECF No. 1, p. 7). Further "Ortiz Villagran's prior court-appointed criminal defense attorney called the EPCDF." (*Id.*).

at the EPCDF to be detained there until released to the Marshals or an agent designated by the Marshals. *See* (ECF No. 1, p. 3). Further, Ortiz Villagran has alleged that he was in fact detained at the EPCDF until he was released to DHS custody.[8] Accepting these allegations as true, the Court finds that Ortiz Villagran has sufficiently alleged that the United States caused him to be over-detained at the EPCDF. Accordingly, the Court further finds that Ortiz Villagran has sufficiently alleged that he was willfully detained in Marshal custody at the EPCDF after the completion of his sentence on July 9, 2018,[9] for violating 8 U.S.C. § 1325 until he was taken into DHS custody on August 24, 2018. *See Rodriguez*, 92 S.W.3d at 507; *Nguyen*, 2001 WL 637573, at *6 (holding that the plaintiff was "willfully detained for fifteen months, his detention was not an accident, it was brought about by . . . purposeful actions[,] . . . and the [p]laintiff was not free to leave.").

Additionally, because the United States does not challenge the other two elements of a false imprisonment claim, the Court finds that Ortiz Villagran has stated a Texas state-law claim for false imprisonment against the United States under the FTCA.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Ortiz Villagran has sufficiently alleged that he was willfully detained by the United States after the completion of his sentence for his violation of 8 U.S.C. § 1325 until he was released into DHS custody on August 24, 2018.

---

[8] Ortiz Villagran contends that on August 24, 2018, he was released to DHS custody. (ECF No. 1, p. 7).
[9] Or possibly beginning on July 11, 2018, because of the immigration detainer. *See* (ECF No. 1, p. 2).

Accordingly, the Court **RECOMMENDS** that "Defendant United States' Motion to Dismiss" (ECF No. 24) be **DENIED**.

**SIGNED** and **ENTERED** this 31st day of July, 2020.

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**