## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **NOE DE JESUS ORTIZ VILLAGRAN,** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | **EP-19-CV-336-DCG** |
| | § | |
| **COUNTY OF EL PASO, TEXAS, and the** | § | |
| **UNITED STATES OF AMERICA,** | § | |
| **Defendants.** | § | |

### ORDER ACCEPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE AND DENYING THE UNITED STATES OF AMERICA'S MOTION TO DISMISS

This matter is before the Court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant United States of America (the Government). Mot. to Dismiss, ECF No. 24. Therein, the Government asserts that Plaintiff Noe De Jesus Ortiz Villagran fails to state a false imprisonment claim against it, and he is therefore not entitled to relief under the Federal Tort Claims Act (FTCA). For the reasons discussed below, the Court will deny the motion.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Noe De Jesus Ortiz Villagran, a citizen of Guatemala, entered the United States from the Republic of Mexico by crossing the Rio Grande River approximately three miles east of the Bridge of the Americas Port of Entry in El Paso County, Texas, on June 4, 2018. *See United States v. Ortiz-Villagran*, EP-18-MJ-4188-MAT, Petty Documents 1 (Criminal Compl.), ECF No. 1. He was arrested and delivered by Customs and Border Protection (CBP) agents to the El Paso County Detention Facility (EPCDF) "under Marshals [Service] custody" to await federal criminal proceedings for improperly entering the United States. Pl.'s Comp. ¶ 17, ECF No. 1.

The United States Marshals Service is a law enforcement agency within the Department of Justice.  28 U.S.C. § 561(a).  Its duties include maintaining custody of federal prisoners "from the time of their arrest by a marshal or their remand to a marshal by the court, until the prisoner is committed by order of the court to the custody of the Attorney General for the service of sentence, otherwise released from custody by the court, or returned to the custody of . . . the Bureau of Prisons."  28 C.F.R. § 0.111(k).  It is also responsible for acquiring "adequate and suitable detention space, health care, and other services and materials required to support prisoners under the custody of the U.S. Marshal who are not housed in [f]ederal facilities."  *Id*. at § 0.111(o).

Pursuant to this authority, the Marshals Service relies on an inter-governmental agreement to house federal detainees in facilities operated by El Paso County, Texas.  *Id.* at ¶ 6; *see also* Mot. to Dismiss, ECF No. 11, Ex. A (Detention Services Intergovernmental Agreement).  Under the terms of the agreement, "Marshals [Service] employees are responsible for custody, care, and the 'safekeeping' of [its] detainees."  Pl.'s Compl. ¶ 9.  "The County is responsible for housing Marshals [Service] detainees and all medical care inside the facility."  *Id*.  The agreement requires the County "to release federal detainees only to law enforcement officers of the Federal Government . . ."  Mot. to Dismiss, ECF No. 11, Ex. A (Detention Services Intergovernmental Agreement), p. 20.

At the time of his delivery to the EPCDF, the CBP agents provided county officials with a Department of Homeland Security (DHS) detainer, Form I-247.  Pl.'s Comp. ¶ 19.  The detainer contained a written request for county officials to maintain custody of Ortiz Villagran for a period "<u>not to exceed 48 hours</u> beyond the time when he/she would otherwise have been

released from . . . custody . . . ." *Id.* (quoting Form I-247).  However, once at the EPCDF, the Marshals Service was solely responsible for his custody during his pretrial detention and while serving his sentence.  *Id.* at ¶ 9, 17.

Ortiz Villagran appeared before a United States Magistrate Judge on June 15, 2018 and pleaded guilty to "improper entry by an alien."  *Ortiz-Villagran*, EP-18-MJ-4188-MAT, Petty Documents 6 (J. Crim. Case), ECF No. 1.  He was sentenced to 35 days' confinement with credit for the ten days already served.  *Id.*  "Therefore, Ortiz Villagran should have been released from the EPCDF on July 9, 2018 or, under the terms of the DHS detainer, 48 hours thereafter."  Pl.'s Compl. ¶ 22.  But he was not released from the EPCDF to DHS custody until August 24, 2018— or 46 days after he completed his federal sentence.  *Id.* at ¶ 23.  He remained in DHS custody for an additional month until he was released on bond.  *Id.* at ¶ 34.

Ortiz Villagran, through his counsel, now asserts a false imprisonment claim against the Government pursuant to the FTCA.  *Id.* at ¶¶ 71–75.  Specifically, he claims Marshals Service "employees did not ensure that Ortiz Villagran—a federal detainee in its custody—was released upon termination of his sentence on July 9, 2018."  *Id.* at ¶ 72.  In other words, he alleges Marshals Service "employees falsely detained [him] without his consent and without authority of law from July 9 to August 24, 2018."  *Id.* at ¶ 74.  He maintains he has exhausted all administrative remedies under the FTCA and his claim is properly before the Court.  *Id.* at ¶ 75.

The Government moves to dismiss the FTCA claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Def.'s Mot. to Dismiss, ECF No. 24.  It observes Ortiz Villagran "does not and cannot assert the County Defendant notified CBP in accordance with the detainer, because it did not."  *Id.* at 4.  It also notes Ortiz Villagran does not "allege that the EPCDF was not

provided with notice of [his] federal sentence indicating his projected release date of July 9, 2018." *Id*. at 5.  It argues, therefore, that Ortiz Villagran "fails to show Defendant United States willfully detained him beyond his scheduled date of release." *Id.*

Ortiz Villagran responds by explaining he alleged in his complaint that "Marshals [Service] employees . . . share responsibility regarding all aspects of the custody of federal detainees in the EPCDF—including release—when Marshals [Service] employees no longer have legal authority to detain those" detainees.   Pl.'s Resp. 3, ECF No. 27 (citing Pl.'s Compl. ¶ 9, ECF No. 1).  He also observes he claimed "Marshals [Service] employees had clear evidence in the form of a federal judgment . . . that the [they] had no authority to hold Ortiz after July 9, 2018.  *Id*. at 2 (citing Pl.'s Compl. ¶¶ 20–22).  He then remarks, "[n]evertheless, Marshals [Service] employees did not themselves pick up Ortiz from EPCDF nor did they direct any other law enforcement agency to pick up Ortiz from EPCDF."  *Id*. (citing Pl.'s Compl. ¶¶ 20–22).  He argues, "[t]herefore, Ortiz has alleged a plausible claim that Defendant U.S., based on the actions of Marshals [Service] employees in the scope of their employment, is liable for the tort of false imprisonment."  *Id*. at 5.

The Magistrate Judge to whom the Court referred this matter recommends that the Court deny the Government's motion to dismiss.   *Ortiz Villagran v. United States*, No. EP-19-CV-00336-DCG-, 2020 WL 4434930, at *1 (W.D. Tex. July 31, 2020).  *See* 28 U.S.C. § 636(b)(1)(B) (permitting a district court, on its own motion, to refer a pending matter to a United States Magistrate Judge for a report and recommendation).   She explains "'[i]n order to establish a valid false imprisonment claim under Texas law, [a plaintiff] must show: '(1) willful detention, (2) without consent, and (3) without authority of law.'"  *Id*. at *3 (quoting *Najera v. United*

*States*, 926 F.3d 140, 144 (5th Cir. 2019)).   She further explains "[i]n Texas '[f]alse imprisonment's first element [of willful detention] may . . . be satisfied by conduct that is intended to cause one to be detained, and in fact causes the detention . . ..'" *Id*. (quoting *WalMart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 507 (Tex. 2002)).   She then reasons, accepting Ortiz Villagran's "allegations as true, . . . Ortiz Villagran has sufficiently alleged that the United States caused him to be over-detained at the EPCDF."  *Id*. at *5.   She adds "because the United States does not challenge the other two elements of a false imprisonment claim, the Court finds that Ortiz Villagran has stated a Texas state-law claim for false imprisonment against the United States under the FTCA."  *Id*.

The Government maintains the Magistrate Judge erroneously interpreted the inter-governmental agreement between the Marshals Service and the County "to only allow the EPCDF to release federal detainees to the custody of a [deputy marshal] or an agent specified by the [deputy marshal]."  Def.'s Obj. 2, ECF No. 35.   It also maintains the Magistrate Judge erred in finding the Government willfully detained Ortiz Villagran from July 11, 2018 to August 24, 2018.  *Id*. at 3.   It argues "failing to ensure [Ortiz Villagran] was released after the [Marshals Service] provided the EPCDF with notice when [he] should be released is not equivalent to willfully acting to keep plaintiff detained beyond his jail sentence."  *Id*. at 4.

Ortiz Villagran responds the Government's "argument that the Magistrate Judge misinterpreted the Agreement is . . . immaterial to the Marshals' role in [his] unlawful detention."  Pl.'s Resp. 4, ECF No. 36.   He explains it is immaterial because "the sole legal authority under which Ortiz was housed in the EPCDF was that of the Marshal[ ]."  *Id*. "Therefore, . . . the Marshals are responsible for his detention and the failure to release him"

upon the completion of his sentence.  *Id.*  Ortiz Villagran further responds the Magistrate Judge correctly determined the Government willfully detained Ortiz Villagran from July 11, 2018 to August 24, 2018.  *Id.* at 5.  He argues Marshals Service employees "were directly responsible for [his] detention, had knowledge of his detention, and allowed his detention to continue."  *Id.* at 6.

## APPLICABLE LAW

A party who files timely written objections to a report and recommendation of a magistrate judge is entitled to a "de novo" review of those portions of the report to which the party objects.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).  A district court need not, however, consider "'frivolous, conclusive, or general objections.'"  *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc)).  As to other portions of the report or when a party does not file written objections, the reviewing court applies a "clearly erroneous, abuse of discretion and contrary to law" standard of review.  *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).  After completing its review, the reviewing court may accept, reject, or modify a report, in whole or in part.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

## ANALYSIS

### A.  Inter-Governmental Agreement

The Government objects to the Magistrate Judge's finding that, in accordance with inter-governmental agreement between the Marshals Service and El Paso County, "'it was only with the consent of the Marshals [Service] that CBP could have retrieved [Plaintiff] from the El Paso County Detention Facility (EPCDF) upon the completion of his sentence.'"  Def.'s Obj. 2, ECF

No. 35 (quoting *Ortiz Villagran*, 2020 WL 4434930, at *4).  The Government also

acknowledges, however, that the agreement says:

> [the County] agrees to release federal detainees only to law enforcement officers of the Federal Government agency initially committing the federal detainee (i.e. Drug Enforcement Administration, Immigration and Customs Enforcement, etc.) or to a Deputy United States Marshal (DUSM).   Those federal detainees who are remanded to custody by a DUSM may only be released to a DUSM or an agent specified by the DUSM or the Judicial District.

*Id.*

The record shows Ortiz Villagran was committed by the Court "to the custody of the

United States Bureau of Prisons for a term of 35 days."  *Ortiz-Villagran*, EP-18-MJ-4188-MAT,

Petty Documents 6 (J. Crim. Case), ECF No. 1.  The record further shows Ortiz Villagran was

never turned over to officials at the Bureau of Prisons.  The Code of Federal Regulations gives

the Marshals Service responsibility for maintaining the custody of federal prisoners "from the

time of their . . . remand to a marshal by the court, until the prisoner is committed by order of the

court to the custody of the Attorney General for the service of sentence [or] otherwise released

from custody by the court . . .."  28 C.F.R. § 0.111(k).  Consequently, Ortiz Villagran remained

in Marshals Service custody until his release to DHS custody on August 24, 2018.  The plain

language of the inter-governmental agreement reasonably leads to the conclusion that, once Ortiz

Villagran was remanded to custody of the Marshals Service by the Court, only a deputy marshal,

his agent, or a court could thereafter effectuate his release.  Therefore, the Magistrate Judge

reasonably concluded in her report and recommendation that only a deputy marshal, his agent, or

a court could order Ortiz Villagran's release.

Furthermore, Ortiz Villagran suggests the inter-governmental agreement is not essential

to his FTCA claim; it merely supports his argument that he was in Marshals Service custody

during his over-detention.   Pl.'s Resp. 3, ECF No. 36.   Ortiz Villagran alleges in his complaint

that "CBP agents . . . remitted [him] to the EPCDF to await his trial . . ." Pl.'s Compl. ¶ 17, ECF

No. 1.   He maintains that "he was housed in the EPCDF . . . under Marshals [Service] custody,"

pursuant to the terms of the inter-governmental agreement.   *Id*.   He claims that, in accordance

with the agreement, "[t]hose federal detainees who are remanded to custody by a [deputy

marshal] may only be released to a [deputy marshal] or an agent specified by the [deputy

marshal] of the Judicial District." *Id*. at ¶ 10.   He concludes, therefore, that, at all relevant times,

he was in the custody of the Marshal's service.   He further asserts that Marshals Service

"employees did not ensure that [he]—a federal detainee in its custody—was released upon

termination of his sentence on July 9, 2018." *Id*. at ¶ 72.   He argues the Marshals Service is

therefore liable for his over-detention.

Notably, the Government never disagrees with Ortiz Villagran's assertion that he was in

Marshals Service custody during his pretrial detention and while serving his sentence.   See Pl.'s

Compl. ¶¶ 17–21.   Consequently, the Government does not dispute Ortiz Villagran's assertion

that "the sole legal authority under which [he] was housed in the EPCDF was that of the

Marshal[ ]." Pl.'s Resp. 4, ECF No. 36.   In other words, the Government does not dispute a

conclusion that the Marshals Service was Ortiz Villagran's jailer.

"[A] jailer has a duty to ensure that inmates are timely released from prison." *Porter v.

Epps*, 659 F.3d 440, 445 (5th Cir. 2011).   A jailer's "functions include not only the duty to

protect a prisoner, but also the duty to effect his timely release." *Whirl v. Kern*, 407 F.2d 781,

792 (5th Cir. 1969).   Good faith is not "a defense to an imprisonment that is not only without

valid process, but contrary to it." *Id.* Furthermore, "[i]gnorance and alibis by a jailer should not vitiate the rights of a man entitled to his freedom." *Id.*

While the Government may try to place responsibility for Ortiz Villagran's over-detention on the County and the CBP, it is the Marshals Service—his jailer—that had a continuing responsibility for his detention and to ensure his release from custody upon the completion of his sentence. *Id.*

Ortiz Villagran has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court will accordingly overrule the Government's first objection.

### B. Willful Detention

The Government also maintains the Magistrate Judge erred when she found it may have willfully detained Ortiz Villagran from July 11, 2018 to August 24, 2018. *Id.* at 3. It argues "failing to ensure [Ortiz Villagran] was released after the [Marshals Service] provided the EPCDF with notice when [he] should be released is not equivalent to willfully acting to keep plaintiff detained beyond his jail sentence." *Id.* at 4.

Ortiz Villagran responds the Marshals Service employees "were directly responsible for [his] detention, had knowledge of his detention, and allowed his detention to continue." Pl.'s Resp. 6, ECF No. 36. As a result, he maintains, the Magistrate Judge correctly determined the Government willfully detained him from July 11, 2018 to August 24, 2018. *Id.* at 5.

The United States waives its sovereign immunity under the FTCA where its law enforcement officers commit certain enumerated intentional torts. 28 U.S.C. § 2680(h). The

enumerated torts include "false imprisonment." *Id*.  "Liability under the FTCA is determined 'in accordance with the law of the place where the act or omission occurred.'" *Villafranca v. United States*, 587 F.3d 257, 260 (5th Cir. 2009) (quoting 28 U.S.C. § 1346(b)).  Under Texas law, "[t]he elements of false imprisonment are (1) willful detention, (2) without consent, and (3) without authority of law." *Martinez v. English*, 267 S.W.3d 521, 529 (Tex. App. 2008) (citing *Wal–Mart*, 92 S.W.3d at 506).

The Government agrees that Ortiz Villagran's detention in the EPCDF past July 9, 2018 was without his consent and without authority of law.  R. & R. 10, ECF No. 34.  It only challenges Ortiz Villagran's claim—and the Magistrate Judge's conclusion—that his over-detention by the Marshals Service was willful.

"False imprisonment's first element may . . . be satisfied by conduct that is intended to cause one to be detained, and in fact causes the detention, even when the actor does not participate in the detention." *Wal-Mart Stores*, 92 S.W.3d at 507.

Ortiz Villagran alleges in his complaint that CBP agents placed him in Marshals Service custody at the EPCDF starting on June 5, 2018.  Pl.'s Compl. ¶17, EF No. 1.  He claims Marshals Service employees were thereafter responsible for his "custody, care, and 'safekeeping'" during his pre-trial detention and while he served his sentence.  *Id.* at ¶¶ 9, 17. He avers Marshals Service employees had knowledge of the final judgment in his criminal case and understood that they would have no authority to hold Ortiz Villagran after July 9, 2018.  *Id.* at ¶¶ 20-22].  Nonetheless, Marshals Service employees—with this knowledge—did not intervene to ensure he was released from custody upon the completion of his sentence and they permitted him to remain in their custody until August 24, 2018.  *Id*. at ¶¶ 35, 71–73.

The Marshals Service, unlike Ortiz Villagran, had

> the means, the freedom, and the duty to make necessary inquiries.   While not a surety for the legal correctness of a prisoner's commitment, . . . [it was] most certainly under an obligation . . . to carry out the functions of [the] office.  Those functions include[d] not only the duty to protect a prisoner, but also the duty to effect his timely release."

*Whirl*, 407 F.2d at 792.

Consequently, based on Ortiz Villagran's allegation in his complaint, a finder of fact may reasonably conclude that the Marshals Service intended Ortiz Villagran to be detained, and in fact caused him to be over-detained.  *Wal-Mart Stores*, 92 S.W.3d at 507.  Therefore, a finder of fact may also "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court will accordingly overrule the Government's second objection.

## CONCLUSION AND ORDERS

After completing a de novo review of those portions of the report to which the Government objects, the Court concludes it should overrule the objections.   As to other portions of the report, the Court concludes the findings and conclusions are not clearly erroneous, an abuse of discretion or contrary to law.  The Court enters therefore the following orders:

**IT IS ORDERED** that the Government's "Objections to Report & Recommendation of the Magistrate Judge" (ECF No. 35) are **OVERRULED**.

**IT IS FURTHER ORDERED** that the "Report and Recommendation of the Magistrate Judge" (ECF No. 34) is **ACCEPTED**.

11

      **IT IS FURTHER ORDERED** that the Government's "Motion to Dismiss" (ECF No. 24) is **DENIED**.

      **IT IS FINALLY ORDERED** that this matter is returned to the Magistrate Judge for further proceedings consistent with this order.

      **SIGNED this  10th  day of December 2020.**

                                                 _____

                                               **DAVID C. GUADERRAMA**
                                             **UNITED STATES DISTRICT JUDGE**